| | |
|---|---|
| Name | Sharon S. Chand |
| Street Address | 3074 Copper Rose Walk |
| City and County | Sacramento |
| State and Zip Code | 95833 |
| Telephone Number | 408-931-3574 |



FILED

AUG 01 2023

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
    DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

Sharon S. Chand

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-against-

Alta California Regional Center (ACRC), Jennifer L. Crick, Lori L. Rich-Banales, Julia Marcele Hill, Philip J. Bonnet, Carson E. Carter, see attached

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**Complaint for Employment Discrimination**

Case No. 2:23-cv-1583 KJM DB (PS)

*(to be filled in by the Clerk's Office)*

Jury Trial:   ☑ Yes   ☐ No
              *(check one)*

I.  **The Parties to This Complaint**

   A.  **The Plaintiff(s)**

   Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

   | | |
   |---|---|
   | Name | Sharon S. Chand, Pro Se |
   | Street Address | 3074 Copper Rose Walk |
   | City and County | Sacramento |
   | State and Zip Code | California, 95833 |
   | Telephone Number | 408-931-3574 |
   | E-mail Address | Sharon.S.Chand@gmail.com |

   B.  **The Defendant(s)**

   Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

   Defendant No. 1

   | | |
   |---|---|
   | Name | Lori Lynn Rich-Banales, Individual |
   | Job or Title (if known) | Executive Director, ACRC |
   | Street Address | 5033 Thalia Drive |
   | City and County | El Dorado Hills, El Dorado County |
   | State and Zip Code | California, 95762 |
   | Telephone Number | 916-978-6424 |
   | E-mail Address (if known) | lbanales@altaregional.org |

   Defendant No. 2

   | | |
   |---|---|
   | Name | Philip J. Bonnet, Individual |
   | Job or Title (if known) | Former Executive Director, ACRC |
   | Street Address | 2676 Armstrong Ave., |
   | City and County | South Lake Tahoe, El Dorado County |

2

      State and Zip Code   California, 96150

      Telephone Number   530-600-1339

      E-mail Address (if known)   pbonnet@msn.com

Defendant No. 3

      Name   Jennifer Lynn Crick, Individual

      Job or Title (if known)   Former Human Resources Director, ACRC

      Street Address   4710 Brand Way

      City and County   Sacramento, Sacramento County

      State and Zip Code   California, 95819

      Telephone Number   916-741-9611

      E-mail Address (if known)   jennifer_crick@yahoo.com

Defendant No. 4

      Name   Carson Elizabeth Carter, Individual

      Job or Title (if known)   Former HR Business Partner, ACRC

      Street Address   1524 E. Wilt Street,

      City and County   Philadelphia, Philadelphia County

      State and Zip Code   PA, 19125

      Telephone Number   Unknown at time of filing

      E-mail Address (if known)

**C.**   **Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is:

      Name   Alta California Regional Center, Organization

      Street Address   2241 Harvard Street, #100

      City and County   Sacramento, Sacramento County

      State and Zip Code   California, 95815

      Telephone Number   916-978-6400

Defendant No. 5
    Name: Julia Marcele Hill, Individual
    Job or Title: Former Human Resources Business Partner
    Street Address: 5020 Bevil Street
    City and County: Sacramento, Sacramento County
    State and Zip Code: California, 95819
    Telephone Number: unknown
    Email: unknown

Defendant No. 6
    Name: Alta California Regional Center, Organization
    Job or Title:
    Street Address: 2241 Harvard Street, #100
    City and County: Sacramento, Sacramento County
    State and Zip Code: California, 95815
    Telephone Number: 916-978-6400
    Email:

Defendant No. 7
    Names: Alta California Regional Center, Board of Directors - Organization
    Job or Title:
    Street Address: 2241 Harvard Street, #100
    City and County: Sacramento, Sacramento County
    Telephone Number: 916-978-6400
    Email: acrcboard@altaregional.org

## II. Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

- ☐ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

  *(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

- ☐ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

  *(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

- ☐ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

  *(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

- ☑ Other federal law *(specify the federal law)*:
  <u>Section 1981 of the Civil Rights Act of 1866</u>

- ☐ Relevant state law *(specify, if known)*:

- ☐ Relevant city or county law *(specify, if known)*:

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ☐ Failure to hire me.
- ☒ Termination of my employment.
- ☐ Failure to promote me.
- ☐ Failure to accommodate my disability.
- ☒ Unequal terms and conditions of my employment.
- ☒ Retaliation.
- ☒ Other acts *(specify)*: Harassment based on race

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B. It is my best recollection that the alleged discriminatory acts occurred on date(s)

**On or about beginning of 2017 until Plaintiff's last day on 08/09/2019.**

C. I believe that defendant(s) *(check one)*:

- ☒ is/are still committing these acts against me.
- ☐ is/are not still committing these acts against me.

D. Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- ☒ race _____
- ☐ color _____
- ☐ gender/sex _____
- ☐ religion _____
- ☐ national origin _____
- ☐ age. My year of birth is _____. *(Give your year of birth only if you are asserting a claim of age discrimination.)*
- ☐ disability or perceived disability *(specify disability)*
  _____

E. The facts of my case are as follows. Attach additional pages if needed.

5

<u>Defendants discriminated against Plaintiff in the enforcement of an employment</u>
<u>contract on the basis of her race, ancestry, and ethnic characteristics, in</u>
<u>"...the enjoyment of all benefits, privileges, terms, and conditions of the</u>
<u>contractual relations." (42 U.S.C §1981 (b)) Additional pages attached.</u>

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

IV. **Exhaustion of Federal Administrative Remedies**

    A.    It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

    B.    The Equal Employment Opportunity Commission *(check one)*:

        ☐    has not issued a Notice of Right to Sue letter.
        ☐    issued a Notice of Right to Sue letter, which I received on *(date)*

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

    C.    Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

        ☐    60 days or more have elapsed.
        ☐    less than 60 days have elapsed.

Discrimination Based on Race

On or about May 16, 2019, Plaintiff made a complaint against her supervisor, Jennifer Crick, Human Resources Director. Plaintiff's complaint identified different terms and conditions of employment compared to (3) caucasian co-workers, Carson Elizabeth Carter, Julia Marcele Hill and Nicole Adriana-Dacus, Human Resources Generalists:
1. Plaintiff was informed by a former white colleague that upon successful completion of the Introductory Period, Plaintiff would be bumped up to the next step in the salary range. Plaintiff did not receive any bump in her salary like her white colleagues after she successfully completed her Introductory Period. Plaintiff waited an entire year to move to the next step in the salary range. Plaintiff was aware another white colleague, Nicole Adrian-Dacus, also received a bump in salary after the Introductory Period.
2. Plaintiff was assigned a significantly heavier workload compared to her white colleagues. Plaintiff was expected to perform highly complex functions within HR, including employee relations inquiries, performance management and annual appraisals for a workforce of 500+ employees, management consultants, development and delivery of training for managers, while white colleagues were assigned specific functions, such as recruitment, benefits, etc.
3. Plaintiff was expected to serve as back-up to white colleagues but the same support was not expected from white colleagues for Plaintiff. In one particular incident, Plaintiff was assigned work to accommodate a last-minute vacation trip for Caucasian co-worker Carson Carter. When Plaintiff refused to take on additional work, Carter went to Crick to complain about Plaintiff. Crick reprimanded Plaintiff for her refusal to accommodate Carter's request. Other Caucasian colleagues were not asked to do Carter's work.
4. Crick publicly recognized the work of Caucasian HR staff during staff meetings, including often clapping for Carter's work accomplishments. Crick ridiculed, used profanity, and minimized the work accomplishments of Plaintiff both in private and in public. Crick criticized Plaintiff when it came to her work accomplishments. Examples included, "your approach was like a guillotine", "you think you're a lawyer", and "you're not that special."
5. Examples of Crick's racist, degrading and abusive comments included included: Plaintiff being told her accent, pronunciation, manner of speaking, and tone was "off-putting"; Crick made statements about "English being tricky" for Plaintiff, including references to "ESL"; Crick's profanity towards Plaintiff "f**k you" and "you're not that special" in front of other HR staff on several occasions; and Crick told a joke in a meeting between Hill and Plaintiff about there being (2) types of Indians, one with feathers, and the other one with a dot, in reference to Plaintiff's South Asian ancestry.
6. Plaintiff was reprimanded by Crick for confrontation with caucasian co-worker Nicole Adrian-Dacus. Crick told Plaintiff there were no issues within HR until Plaintiff joined "her team". Plaintiff told Crick she was being bullied by Adrian-Dacus and attempted to stand up for herself but Crick did not believe Plaintiff. Crick consoled Adrian-Dacus and made Plaintiff look like the aggressor in the situation. Another caucasian co-worker came forward and informed Crick it was in fact an incident of bullying by Adrian-Dacus and

    Plaintiff attempted to stand up for herself. Crick did not offer an apology or acknowledge the misunderstanding with Plaintiff.
7. Crick took prompt action to address the misconduct when (2) caucasian co-workers reported similar bullying behavior by Adrian-Dacus. Crick did not make accusatory comments to the (2) caucasian staff and believed what happened to them.
8. On or about February until August, 2019, Hill subjected Plaintiff to on-going and pervasive racial harassment in the workplace, and created a hostile work environment. The harassment occurred in the presence of Crick, but she failed to take any action to stop the harassment. When Plaintiff went to Crick with her concerns about Hill, Plaintiff was subjected to a meeting with Hill and Crick and verbally attacked rather than have her concerns addressed about Hills' comments. Hill called Plaintiff "a liar" and Crick defended the misconduct of Hill towards Plaintiff.
9. During the course of the investigation, Plaintiff disclosed to Bonnet and Shaw (investigator) working through breaks and lunches to keep up with her heavier workload compared to her caucasian co-workers. Despite being made aware about the earned overtime pay, Bonnet did not make any attempts to pay Plaintiff.

Harassment Based on Race

    Plaintiff was subjected racial harassment by caucasian co-worker Julia Marcele Hill:
1. Examples of Hill's racial harassment towards Plaintiff included: Plaintiff being told that people who look like her decreased home values in places where Hill grew up; Hill made comments about employees working at IKEA all being on H-IB visas, in reference to Plaintiff's South Asian ancestry; Hill isolated Plaintiff from social gathering with other HR staff in the office by inviting staff in her office and excluding Plaintiff; Hill paced outside Plaintiff's office, then loudly accused Plaintiff of wrongdoing before other HR staff had to intervene and stop Hill's behavior from escalating towards Plaintiff. Hill duplicated Plaintiff's work products and presented the work as her own during staff meetings.
10. On or about 07/01/2019, during a meeting in Hill's office, Hill started yelling at Plaintiff, "I'm tired of your bullshit!" and threatened "You're not safe! You're not safe!". When Plaintiff immediately exited the office as Hill ran from behind her desk and chased Plaintiff as Plaintiff made her way to Jennifer Crick's office. In presence of Crick, Hill continued to yell at Plaintiff, then lunged forward towards Plaintiff. Plaintiff took a step back in self defense, anticipating a physical attack from Hill. Hill moved forward and grabbed a piece of paper out of Plaintiff's hand and continued to yell at Plaintiff.
11. Under California Penal Code §242 PC, Hill's conduct towards Plaintiff was a simple assault. Crick witnessed the assault and made no attempts to escalate the situation, or even attempted to separate Hill from Plaintiff. Two other staff present in the HR office on that day witnessed the incident and heard Hill yelling at Plaintiff behind closed doors.
12. On the same day, Plaintiff sent an email about the assault to Philip Bonnet, Executive Director, and Jennifer Shaw, investigator hired to look into Plaintiff's complaint. Bonnet did not respond to the email or made attempts to prevent further incidents of harassment and/or assault from Hill towards Plaintiff during the course of the investigation. .

13. Next day, when Plaintiff returned to work, Crick was in Hill's office consoling her (Hill). Crick later came into Plaintiff's office and defended Hill's actions and stated Plaintiff provoked Hill to react in that manner. Plaintiff was expected to report to Crick and work with Hill during the course of the investigation after the incident. Plaintiff reached out to Lori Rich-Banales, about her concerns of a hostile work environment, continued harassment from Crick and Hill; Rich-Banales did not reply to the email or made attempts to prevent further harassment.

Plaintiff was subjected to racist workplace harassment. Examples includes:
- Racist comments by Julia Hill about Asians and their driving abilities and further stating, "If Family Guy can make a joke like that, I can make a joke like that"; referred to African-American male co-worker as the "office gangster"; described black and brown staff as "criminals" for having the same misconduct issues as caucasian employees. .
- Hill made a comment to Plaintiff about being afraid of an upcoming meeting with a black employee and made a hand gesture of a gun suggesting possible violence from this black employee. Hill made further racist comments publicly discussing the black female employee's body, attire and mocking her body movements with Jennifer Crick, Human Resources Director, laughing along and other caucasian co-workers listening.
- Same black employee was placed under surveillance for possible misconduct while non-black employees with similar performance concerns were not. Crick and Hill informed HR staff they plan to terminate the black employee and not pay unemployment benefits, while non-black employees who were terminated for similar concerns were allowed to resign and collect unemployment benefits. Crick stated she would challenge in court any claims submitted by the black employee for unemployment benefits. Plaintiff was directed to provide unemployment benefits as incentives for non-black employees to resign for similar performance concerns and/or misconduct.
- Hill mocked the death of a young black rapper and activist and "joked" this was the reason why the only (2) black HR employees were early to work. One of the black employees went to Crick with concerns about Hill's racist behavior and no actions were taken to address Hill's racist comments and remarks.
- Plaintiff was asked by Crick to coordinate an unlawful surveillance of a black employee during his medical leave. Plaintiff was instructed to not inform the black employee's manager about the surveillance, who was also black. The surveillance was "open-ended" to find anything incriminating against the black employee. Non-black employees were not subjected to surveillance during their medical leaves. The surveillance of the black employee on medical leave was paid with taxpayer money.
- Plaintiff filed her internal complaint after targeted surveillance of the (2) black employees. After Plaintiff was terminated; she made the lack black employee who took medical leave aware about the surveillance and provided a witness statement. The employee's black manager, D. Dupree went to Deputy Director Rich-Banales about the surveillance and she was gaslighted and told the surveillance was done for her (the manager's) benefit.
- Dupree had previously gone to Rich-Banales about anonymous comments made by leadership during a training that associated black employees with the "N" word. Instead of addressing the concern, management decided to fire the trainer of the DEI training

(who had uncovered the basis within the ranks of leadership) and instead hired a middle-age caucasian male to complete the rest of the diversity training.
- When Plaintiff went to the training conducted by the caucasian trainer, she, along with an African-American male and Hispanic female were singled out and put in a group to illustrate to the rest of the caucasian attendees about the disadvantages of a minority group. Humiliated and angry over the experience, Plaintiff informed Crick about the incident, who reported the incident to Rich-Banales. No actions were taken by Rich-Banales or management to address the concerns with Plaintiff or Dupree.

Retaliation

On or about May 16, 2019, Plaintiff made an internal complaint about Jennifer Crick, Human Resources Director, Julia Marcele Hill and Carson Elizabeth Carter, Human Resources Business Partners. Plaintiff was subjected to retaliation due to her internal complaint. On July 19 through August 09, 2019, Plaintiff was placed on administrative leave in retaliation for her internal discrimination complaints.

1. On July 23, 2019, Plaintiff was called into Philip Bonnet's office, Executive Director; in attendance was Lori Rich-Banales, Deputy Executive Director.
2. Bonnet presented Plaintiff with a one page summary of findings from investigation into Plaintiff's complaint against Crick and Hill. Bonnet stated the internal investigation did not support Plaintiff's allegations against Crick, however allegations of racism against Hill were supported.
3. Bonnet reprimanded Plaintiff for filing a complaint against Crick and stated that he did not believe Crick was a racist. Bonnet stated that no one else in the HR office had issues with Crick besides Plaintiff.
4. Bonnet added that Hill's racism had improved under the guidance of Crick and the caucasian staff within the HR office did not feel safe working with Plaintiff because of her complaint against them. Rich-Banales added that Plaintiff was acting "hawkish" reporting the actions of her caucasian co-workers to management (in reference to the assault and on-going harassment during the investigation).
5. Rich-Banales attempted to gaslight Plaintiff and told her that references to ESL by Crick were actually meant as a compliment that Plaintiff mistook as a racist comment because Plaintiff spoke more than one language.
6. Bonnet threatened reassignment outside of HR, offered Plaintiff to quit her job, and when all else failed, reiterated the threats of Hill that she (Plaintiff) was "not safe".
7. Bonnet was angry at Plaintiff and stated Carter had a right to retaliate against Plaintiff because she (Plaintiff) had made her (Carter) the subject of the complaint.
8. Bonnet demanded Plaintiff take accountability for her actions for filing a complaint against Crick and Carter.

9. Plaintiff was put back on administrative leave for refusing to quit her job or not agreeing to make promises about reporting further retaliation from her caucasian co-workers.
10. On or about July 24, 2019, Bonnet and Rich-Banales called Plaintiff to resume their efforts to terminate Plaintiff from employment.
11. Bonnet plainly told Plaintiff she could not return to work because the identified (4) caucasian employees, Crick, Adrian-Dacus, Hill and Carter, did not want to work with her because of the complaint against them. Plaintiff stated the caucasian employees threatened to quit their job if Plaintiff was allowed to return to work; they pleaded with Bonnet both in person and wrote statements in support of Crick, attacking Plaintiff's character.
12. Carter went to Bonnet and cried about not returning Plaintiff to work; Bonnet stated he could not lose the caucasian employees, who made up the majority of the HR department, and again offered Plaintiff money to quit her job. When Plaintiff told Bonnet and Rich-Banales what they were doing was against the law and she would be filing a complaint with the state, Bonnet abruptly hung up on Plaintiff.
13. On or about July 30, 2019, Plaintiff notified by email ACRC/Bonnet was setting up a meditation to "work through [Plaintiff's] concerns with manager, co-workers and others at the agency." Plaintiff was directed to appear for a meditation on 08/06/2019 under the false pretense that she would be allowed to return to work after discussing her concerns with the mediator.
14. On August 6, 2019, Phyllis Cheng, Meditor and former Director of the Department of Fair Employment and Housing (DFEH), where Plaintiff's complaint was filed, flew in from Southern California, to conduct the mediation.
15. Plaintiff was subjected (7) hours of coercion to sign a severance agreement to end her employment at ACRC. Plaintiff requested several times to end the mediation and leave, and was informed by Cheng that her employment would be terminated if she left on that day and Plaintiff would receive nothing. Plaintiff asked to speak with a lawyer and Cheng informed Plaintiff that she has waived her rights to legal representation when she (Plaintiff) signed a confidentiality agreement at the start of the mediation.
16. Cheng informed Plaintiff she was unqualified to do her job because she (Plaintiff) used intermittent leave under Family Medical Leave Act and also requested reasonable accommodations at work. Cheng presented Plaintiff with print outs of her medical leave as evidence of her unsuitability for continued employment.
17. Cheng impressed upon Plaintiff that her complaint with DFEH (which she was provided a copy of) would not survive based on Cheng's assessment as a former DFEH Director.
18. When Plaintiff continued to refuse to sign the agreement, Cheng brought Bonnet into the room, who directly threatened Plaintiff, "you sign the settlement today or I'll fire you tomorrow." Plaintiff signed the agreement and she was placed back on administrative leave until her last day at work.

19. Plaintiff went to the office of DFEH and discussed the actions of Bonnet and Cheng. Plaintiff was informed about new laws that became effective in 2019, making the actions of Bonnet unlawful. Contrary to what Cheng told Plaintiff, ACRC was legally obligated to give notice or provide Plaintiff an opportunity to seek legal presentation.
20. Plaintiff relied on the fraudulent information provided by Cheng about waiver of legal rights and FMLA, and viability of her case filed with DFEH.
21. Cheng's actions were in violation of laws enforced by her former agency. Cheng was paid ~$7,000 by Bonnet for her services, all taxpayer money. Cheng disclosed a conflict of interest during mediation began on 08-06-2019 and informed Plaintiff she was a former co-colleague of ACRC's employment lawyer, Bruce Sarchet. Sarchet sent a cease and desist letter to Plaintiff to stop making disparaging statements about ACRC or mention the settlement once Plaintiff started speaking to the State and others about ACRC's unlawful actions.
22. Plaintiff made several attempts to reach the ACRC Board of Directors about the actions of Bonnet, Rich-Banales, and Crick. In or around October, Bonnet blocked Plaintiff's attempts to reach the Board by blocking her emails and calls to ACRC. When Plaintiff submitted her complaint to the board on ACRC's website, Board President, Dan Lake, and Vice President, Rita Walker, dismissed Plaintiff's complaint against Bonnet within a day without any due diligence. Plaintiff made a second attempt and submitted her complaint on ACRC's website and it was completely ignored by the Board.
23. During Covid, the public could call into the Board of Directors' meetings. When Plaintiff called, her calls were muted by the board, new restrictions were put into place by Board President Lake to prevent Plaintiff from asking the Board questions about Bonnet/senior management. After Plaintiff asked Lake directly about the Board's legal obligations to look into reported complaints about senior management, Plaintiff was directed by Lake to resubmit her complaint. Shortly afterwards, Lake sent a signed letter to Plaintiff and informed her the Board had looked into her concerns and they have decided to not "engage" with the Plaintiff.
24. The Board banned Plaintiff from attending further meetings. These meetings are open to the public and a condition of the funding ACRC receives as a State Contractor. The Board is the governing body of ACRC and Bonnet was their only employee. The Board had the ability to hold Bonnet accountable for his racist and unlawful actions, but instead the Board, under the leadership of its long-term President, Dan Lake, allowed Bonnet to continue to serve as the Executive Director until his retirement, then selected Rich-Banales as the new Executive Director of ACRC. The Board had the ability to reinstate Plaintiff's employment.

V.  **Relief**

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Back pay; compensatory damages; punitive damages; attorney's/court fees and costs. Defendants conduct was intentional, egregious, and malicious towards Plaintiff based on her race. Defendants flagrantly violated Plaintiff's civil rights and terminated her employment as retaliation for making an internal complaint against her white colleagues. Plaintiff suffered severe mental and physical anguish because of racial discrimination and harassment, including retaliation by Defendants; Plaintiff requests trial by jury.

VI. **Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 08/01, 2023

Signature of Plaintiff _(signed)_
Printed Name of Plaintiff   Sharon S. Chand

7