1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9              FOR THE EASTERN DISTRICT OF CALIFORNIA
10
11   SHARON S. CHAND,                          No.  2:23-cv-1583 DC SCR (PS)
12                 Plaintiff,
13          v.                                 ORDER AND FINDINGS AND
                                               RECOMMENDATIONS
14   ALTA CALIFORNIA REGIONAL
     CENTER, et al.,
15
                   Defendants.
16
17

18          Plaintiff, Sharon S. Chand, filed this action pro se and paid the filing fee.  The case was

19   accordingly referred to the undersigned pursuant to Local Rule 302(c)(21).  Pending before the

20   undersign is Defendants' motion to dismiss the First Amended Complaint ("FAC") under Rule

21   12(b)(6).  ECF No. 5.

22          For the reasons stated below, the undersigned recommends dismissal of Plaintiff's Fair

23   Employment and Housing Act ("FEHA") claims against all Defendants, Plaintiff's 42 U.S.C.

24   § 1981 claims against Defendants Crick and Rich-Banales, Plaintiff's § 1981 hostile work

25   environment and non-employment-based claims against Defendants Bonnet and Alta California

26   Regional Center ("ACRC"), and all claims against ACRC's Board of Directors.  The undersigned

27   further recommends granting Plaintiff leave to amend the dismissed claims, except for the claims

28   against ACRC's Board of Directors, which should be dismissed with prejudice.

                                            1

I.   **Background**

   A.  **The First Amended Complaint**

Plaintiff initiated this case on August 1, 2023.  ECF No. 1.  On October 25, 2023, Plaintiff filed the FAC.  ECF No. 4.  In the FAC, Plaintiff asserts claims for harassment and discrimination under FEHA, and violation of her right to make and enforce contracts under 42 U.S.C. § 1981. ECF No. 4 at 5.  In support of her claims, she alleges the following facts.

On or around November 1, 2016, Defendant ACRC hired Plaintiff as a Human Resources ("HR") generalist.  ECF No. 4 at 6.  On August 6, 2019, Plaintiff participated in a mediation where she was coerced into resigning from her employment at ACRC.  *Id.* at 11-12.  August 9, 2019, was Plaintiff's last day of employment at ACRC.  Id. at 20.

   1.  **Allegations of Discrimination, Harassment, and Retaliation During Plaintiff's Employment with ACRC**

Plaintiff alleges discrimination and harassment by her supervisor, Jennifer Lynn Crick, HR Director, and three other HR generalists, Julia Marcele Hill, Nicole Adrian-Dacus, and Carson Elizabeth Carter.  *Id.* at 6, 10.

Plaintiff's allegations against Crick are based on Crick's alleged disparate treatment towards Plaintiff.[1]  Plaintiff specifically alleges that Crick treated Plaintiff differently than her white co-workers because,  unlike her white co-workers, Plaintiff (1) did not receive a pay raise at the completion of her initial probationary period; (2) carried a heavier workload; (3) was required to provide backup support to her white co-workers, but did not receive that same support herself; (4) was criticized, reprimanded, and ridiculed in private and public; (5) was told "her accent, pronunciation, manner of speaking, and tone was 'off putting'"; (6) was told English is tricky, with references to English as a Second Language (ESL); and (7) was ignored or mistreated when she complained about mistreatment by her colleagues, Adrian-Dacus and Hill.  *Id.* at 6-7.

---

[1]  Plaintiff does not clearly allege her own race or ethnicity, though certain facts indicate she is of Indian or Fijian/Indian descent.  ECF No. 4 at 7 (alleging that Crick "joke[d]" about "there being (2) types of Indians, one with feathers, and the other with a dot, in reference to Plaintiff's race"); *id*. at 16 (stating in complaint to the Department of Fair Employment and Housing that she was subjected to discrimination based on "Fijian/Indian" ancestry and/or national origin).

1   Plaintiff also alleges that Crick treated other non-white employees differently than white

2   employees by (1) placing them under surveillance for possible misconduct while they were on

3   medical leave, and (2) not discharging them in ways that allowed them to obtain unemployment

4   benefits. *Id.* at 9.  Additionally, Crick allegedly ignored complaints from other employees

5   regarding racist comments by Hill. *Id.*

6        Plaintiff alleges that between February and August of 2019, Hill harassed Plaintiff based

7   on Plaintiff's race.  Plaintiff specifically alleges that Hill made racist comments about: Asians and

8   their driving abilities; black and brown people, referring to them as criminals, gangsters, and

9   stating that they depreciate the value of neighborhoods where they live; and how people who look

10  like Plaintiff are better suited to work at Ikea. *Id.* at 8.

11       On or around May 16, 2019, Plaintiff made internal discrimination and harassment

12  complaints against Crick, Hill, Adrian-Dacus, and Carter. *Id.* at 8.  ACRC hired an investigator

13  to investigate Plaintiff's complaints. *Id.* at 8.  While the investigation was ongoing, on or around

14  July 1, 2019, Hill verbally and physically attacked Plaintiff, yelling "I'm tired of your bullshit!",

15  threatening "You're not safe! You're not safe!" and snatching a piece of paper out of Plaintiff's

16  hand. *Id.* at 8.  Crick witnessed this incident and did nothing to deescalate the situation or

17  separate Hill from Plaintiff. *Id.* at 8.  That same day, Plaintiff reported the assault to the

18  investigator, ACRC's Executive Director Bonnet, and ACRC's Deputy Director Rich-Banales.

19  *Id.* at 7-8.  None of them took action to ensure Plaintiff's safety from Hill during the ongoing

20  investigation. *Id.* at 8.  The following day, Crick defended Hill's actions and accused Plaintiff of

21  provoking Hill. *Id.*

22       Plaintiff also alleges that ACRC, Bonnet, and Rich-Banales retaliated against her for

23  making the May 16, 2019, complaint against Crick, Hill, and other co-workers. *Id.* at 10.

24  Plaintiff alleges that on or about July 19, 2019, Bonnet placed Plaintiff on administrative leave

25  based on the results of their investigation into her complaints. *Id.* at 10.  On or about July 23,

26  2019, Bonnet and Rich-Banales, informed Plaintiff that her allegations towards Crick were found

27  ////

28  ////

1   unsubstantiated, but her allegations of racism against Hill were substantiated.  *Id.* at 10.[2]  Hill was

2   not placed on administrative leave at any point, even after the allegations of racism against her

3   were substantiated.  *Id.* at 10.

4         That same day, Bonnet reprimanded Plaintiff for filing the complaint against Crick and

5   told Plaintiff that white staff within HR did not feel safe working with Plaintiff because of

6   Plaintiff's complaints.  *Id.* at 10.  Bonnet offered her money to quit her job.  *Id.*  When Plaintiff

7   refused, Bonnet threatened to reassign Plaintiff outside of HR, and told Plaintiff to take

8   "accountability" for her role in filing the complaint and provide assurances that she would not

9   make further complaints about white co-workers.  *Id.*  When Plaintiff continued to refuse to quit,

10  Bonnet told Plaintiff she was "not safe" and extended her administrative leave.  *Id.*  at 10-11.

11        The following day, Bonnet and Rich-Banales called Plaintiff to reiterate that she could not

12  return to work because the four employees she complained about did not want to work with her

13  and felt "unsafe."  *Id.* at 11.  When Plaintiff told Bonnet and Banales that what they were doing

14  was unlawful and that she was going to file a complaint with the state, they hung up.  *Id.*

15  Sometime before July 30, 2019, Plaintiff filed a complaint with the Department of Fair

16  Employment and Housing ("DFEH").  *Id.*

17        On July 30, 2019, Bonnet emailed Plaintiff directing her to appear for mediation on

18  August 6, 2019, to "work through [Plaintiff's] concerns with manager, co-workers and others at

19  the agency."  *Id.*  On August 6, 2019, Plaintiff appeared for mediation under the false pretense

20  that she would be allowed to return to work if she met with the mediator.  *Id.*  Plaintiff and

21  Bonnet participated in the mediation, which was facilitated by Phyllis Cheng, former Director of

22  DFEH.  *Id.*

23        Plaintiff alleges that Defendants paid Cheng $7,000 to facilitate the mediation.  *Id.*  In

24  turn, Cheng subjected Plaintiff to seven hours of coercion to resign her employment and sign a

25  Settlement Agreement, telling Plaintiff that: (1) her employment would be terminated if she left

26  the mediation; (2) she had waived her right to legal representation when she signed a

27

28  [2]  The FAC does not indicate any investigatory findings with respect to Adrian-Dacus or Carter.

confidentiality agreement and agreed to participate in the mediation; (3) Plaintiff was unqualified

to do her job because she had requested accommodations; and (4) Plaintiff's complaint with

DFEH would not survive.  *Id.*  When Plaintiff refused to sign the Settlement Agreement, [3] Cheng

brought Bonnet into the room, and Bonnet threatened "you sign the settlement today or I'll fire

you tomorrow."  *Id.*  Plaintiff signed the Settlement Agreement and returned to administrative

leave until her last day of work at ACRC, on August 9, 2019.  *Id.*

### 2.  Allegations of Discrimination, Harassment, and Retaliation Post-Employment Conduct

After her separation from ACRC, Plaintiff went to DFEH to dismiss her pending

complaint against ACRC and discuss Bonnet's and Cheng's conduct during the mediation.  *Id.* at

12.  DFEH informed Plaintiff that "employers are prohibited from requiring employees to sign a

release of claims under [FEHA] as a condition of employment," it is "unlawful for employers to

require employees to sign non-disparagement agreement to deny their right to disclose

information about unlawful acts in the workplace," and "[s]uch agreements are deemed

unenforceable as against public policy."  *Id.* at 12.

Plaintiff made several attempts to contact ACRC's Board of Directors ("Board") about the

actions of Bonnet, Banales, and Crick.  *Id.* at 13.  In or around October 2019, Bonnet blocked

Plaintiff's calls and emails to the Board.  *Id.*  Plaintiff then submitted a complaint to the Board via

ACRC's website.  *Id.*  Within a day, the Board dismissed Plaintiff's complaint without any due

diligence or investigation.  *Id.*  In February 2020, Plaintiff resubmitted her complaint, which was

ignored.  *Id.* at 13.

During COVID, the public could attend ACRC's Board meetings via phone.  *Id.*  When

Plaintiff called into these meetings, her calls were muted by the Board, preventing her from

asking the Board questions about Bonnet and senior management.  *Id.* at 13.  At some point,

---

[3]  In the FAC, the Plaintiff refers to the August 6, 2019, agreement as a severance agreement, ECF No. 4 at 11, and settlement agreement, *id.* at 12.  In the briefs on the motion to dismiss, both parties refer to the agreement as a settlement agreement.  ECF No. 5-1 at 10-12, 15-16, 18-22; ECF No. 9 at 4, 9-10; ECF No. 10 at 6-10, 14-15.  For the sake of clarity and because the agreement was entered into during mediation, the undersign refers to the agreement as the "Settlement Agreement."

1   Plaintiff was able to ask the Board about its legal obligations to investigate reported complaints

2   against senior management.  *Id.*  The Board directed Plaintiff to re-submit her complaint, which

3   she did.  *Id.*  The Board responded by sending a letter stating it had looked into Plaintiff's

4   concerns and had decided not to "engage" with Plaintiff.  *Id.*

5          Based on the Settlement Agreement between Plaintiff and ACRC, the Board concluded

6   that it could ban Plaintiff from attending further meetings.  *Id.* at 13.  Plaintiff alleges that their

7   decision to ban her from these meetings prevents her from being able to make future contracts

8   with ACRC for services and/or offer services as a vendor to consumers.  *Id.*

9          **B.  Motions to Dismiss**

10         Defendants Banales, Rich-Bonnect, Crick, and ACRC filed the present motion to dismiss

11  on the following grounds: (1) the Board does not have the capacity to be sued because it is not a

12  distinct entity separate from ACRC, ECF No. 5-1 at 13; (2) "Plaintiff failed to plead exhaustion

13  of administrative remedies for her claims for race discrimination and harassment under California

14  law," *id.* at 8; (3) "Plaintiff's claims against each of the [D]efendants are subject to general

15  release as part of a settlement that was reached at a formal mediation," *id.*; (4) "virtually all of the

16  conduct upon which Plaintiff's claims are based occurred before she released her claims and/or

17  outside the statute of limitations for Plaintiff's race discrimination claim under 42 U.S.C.

18  § 1981," *id.*; and (5) "Plaintiff has not factually pleaded a cognizable claim for race

19  discrimination under [] § 1981 based on alleged conduct that occurred within the limitations

20  period and/or after Plaintiff released her claims," *id*.  In their reply, Defendants argue for the first

21  time that Plaintiff's FEHA claims should be dismissed because they were filed outside the statute

22  of limitations period.  ECF No. 10 at 5.

23  **II.   Legal Standard**

24         A defendant may move to dismiss a claim under Rule 12(b)(6) if the allegation "fail[s] to

25  state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive, the

26  plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to

27  relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

28  *Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  This standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense," *Iqbal*, 556 U.S. at 679, and to "draw all reasonable inferences in favor of the nonmoving party." *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014) (internal quotation marks omitted).  Stating a claim "requires more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555.

On a Rule 12(b)(6) motion, the Court may consider all materials incorporated into the complaint by reference, as well as evidence properly subject to judicial notice. *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 617-18 (9th Cir. 2022).  "Ultimately, dismissal is proper under Rule 12(b)(6) if it appears beyond doubt that the non-movant can prove no set of facts to support its claims." *Boquist*, 32 F.4th at 773–74 (internal citation and quotation marks omitted) (cleaned up).

The Court may dismiss for failure to state a claim when the allegations of the complaint and judicially noticeable materials establish an affirmative defense or other bar to recovery, such as the expiration of the statute of limitations. *See Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (quoting *Jones v. Bock*, 549 U.S. 199, 215 (2007)); *see also Goddard v. Google Inc.*, 640 F. Supp. 2d 1193, 1199, n. 5 (N.D. Cal. 2009) (noting that "affirmative defenses routinely serve as a basis for granting Rule 12(b)(6) motions where the defense is apparent from the face of the [c]omplaint").  However, dismissal under Rule 12(b)(6) is improper if the allegations of the complaint and judicially noticeable materials concerning the defense raise disputed issues of fact. *ASARCO, LLC v. Union Pacific R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) (citing *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (per curiam)).

////

////

////

////

7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.   Analysis

#### A.   Impact of the Parties' Settlement Agreement, Plaintiff's Release of Claims, and Conduct During the 2019 Mediation on the Present Motions

Defendants raise what is in effect a threshold issue as to all of Plaintiff's claims: Whether the "Stipulation for Settlement and Mutual Release of Claims" she signed on August 6, 2019 ("Settlement Agreement") bars her pursuit of redress for alleged wrongs committed before that date. Specifically, Defendants argue that any conduct that occurred before August 6, 2019 cannot be the basis for a claim in this case, because (1) Plaintiff released all such claims in the Settlement Agreement of that date; (2) Plaintiff cannot evade the application of the Settlement Agreement by relying on communication subject to mediation privilege; and (3) the FAC fails to allege the Settlement Agreement is invalid. ECF No. 5-1 at 15-21. In opposition, Plaintiff challenges the validity of the Settlement Agreement on multiple grounds and argues that because the Settlement Agreement is invalid, she did not release her claims against Defendants. ECF No. 9 at 4-11. In reply, Defendants point out that Plaintiff's opposition does not address the mediation privilege, which they argue prevents Plaintiff from relying on any communication during the mediation to challenge the validity of the Settlement Agreement. ECF No. 10 at 6-11.

This is a consequential issue. Nearly all of Defendants' alleged misconduct that could plausibly give rise to legal liability occurred before August 6, 2019. If Plaintiff's release in the Settlement Agreement is valid, it would preclude at least some of her claims. However, as explained below, in the context of this Rule 12(b)(6) motion, the Court cannot rely on the Settlement Agreement. Moreover, given the contested validity of the Settlement Agreement, the Court cannot rely on it to conclude that a further amendment of Plaintiff's complaint would be futile. Nor should Plaintiff be precluded from relying on allegations concerning the mediation that led to the Settlement Agreement, to the extent those allegations are relevant to her claims.

#### 1.   The Settlement Agreement

In support of their motion to dismiss, Defendants attach a copy of the Settlement Agreement signed by Plaintiff and ACRC's Executive Director, Bonnet, but do not explain how the Court can consider this document at the pleading stage. ECF No. 5-1 at 29-32. For the

reasons stated below, the Court will not consider the Settlement Agreement to rule on Defendant's motion to dismiss.

Generally, on a Rule 12(b)(6) motion, a district court may not consider materials beyond the pleadings without converting the motion to a motion for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); Fed. R. Civ. P. 12(d). There are three exceptions to this general rule. *Id.* A district court may consider documents that are: (1) judicially noticeable, (2) attached and properly submitted as part of the complaint, or (3) subject to the incorporation by reference doctrine. *Id.*; *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). A private settlement agreement is not the kind of document that can be judicially noticed.[4] *See* Fed. R. Civ. P. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). Nor was the Settlement Agreement attached to the complaint. Accordingly, the remaining issue is whether the Settlement Agreement is incorporated by reference. For the reasons provided below, it was not so incorporated.

A document "may be incorporated by reference into a complaint if the plaintiff refers *extensively* to the document or the document *forms the basis* of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also Khoja*, 899 F.3d at 1002 ("the mere mention of the existence of a document is insufficient to incorporate the contents of the document."). Incorporation is appropriate where the claim *necessarily depends* on the document. *Khoja*, 899 F.3d at 1002. A claim necessarily depends on a document when claims are predicated on, or arise from, the document. *Id.*; *see also Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as recognized in Abrego Abrego v. Down Chem. Co.*, 443 F.3d 676, 681-82 (9th Cir. 2006) ("[I]f a plaintiff's claims are predicated upon a

---

[4] Courts regularly take judicial notice of settlement agreements *filed in other litigation*, but the Court could identify no persuasive authority granting judicial notice of a pre-litigation private settlement agreement. *See, e.g., ASARCO, LLC v. Union Pacific R. Co.*, 765 F.3d 999, 1008 n.2 (9th Cir. 2014) ("Because the settlement agreement was filed with the bankruptcy court and is a publicly available record, it is properly subject to judicial notice . . . and thus may be considered on a Rule 12(b)(6) motion to dismiss.").

document, the defendant may attach the document to his Rule 12(b)(6) motion.").  "However, if the document *merely creates a defense* to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint" and should not be incorporated. *Id.* (emphasis added).  Further, it is "improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Id.* at 1003; *see also id.* at 1014 ("The incorporation-by-reference doctrine does not override the fundamental rule that courts must interpret the allegations and factual disputes in favor of the plaintiff at the pleading stage.").

Prior to *Khoja*, several district courts in the Ninth Circuit allowed incorporation of a settlement agreement that, if valid, would bar claims alleged by the plaintiff in his or her complaint.  *See Birdsong v. AT&T Corp.*, No. C12-6175 THE, 2013 WL 1120783 (N.D. Cal. Mar. 18, 2013); *Young v. AmeriGas Propane, Inc.*, No. 14-cv-0583 BAS (RBB), 2014 WL 5092878 (S.D. Cal. Oct. 9, 2014); *Advanced Cleanup Techs., Inc. v. BP Am. Inc.*, No. 1:14-cv-9033-CAS (AJWx), 2015 WL 13841820, at *2 n.2 (C.D. Cal. Oct. 9, 2015).  However, post-*Khoja*, several district courts have declined to allow defendants to incorporate release agreements to argue that plaintiff's claims are barred.  *See Advance Risk Managers, LLC v. Equinox Management Group, Inc.*, Case No. 19-cv-3532-DMR, 2019 WL 6716292 at *5 (N.D. Cal. 2019) (declining to incorporate by reference a release agreement because it was only briefly mentioned in the complaint, did not form the basis of the plaintiff's claim, and was defendant's attempt to dispute facts stated in the well-pleaded complaint by arguing that they were barred)*; Aledlah v. S-L Distribution Co.*, No. 20-cv-0234 JSC, 2020 WL 2927980 at *3 (N.D. Cal. 2020) (finding pre-*Khoja* courts' reasoning—that release documents were integral to plaintiff's claim because it would bar plaintiff's claims—to be unsupported by Ninth Circuit law and would "obliterat[e] the general rule that courts may not consider materials outside the pleading when evaluating the sufficiency of a complaint"); *Almaznai v. S-L Distribution Co., LLC*, No. 20-cv-8487, 2021 WL 4457025, at *4 (N.D. Cal. June 21, 2021) (declining to incorporate by reference a release agreement because it only served to form an affirmative defense and was not integral to the complaint); *Mednick v. Virtual Sonics, Inc.*, No. 21-cv-3755 MRW, 2021 WL 4805194, at *2

10

(C.D. Cal. July 22, 2021) ("[D]istrict courts have declined to incorporate release agreements into civil complaints in evaluating dismissal motions in employment-related cases" because "courts recognize that the existence or non-existence of a valid release is a defense to liability, not a fundamental basis of the plaintiff's claim."); *but see Bamforth v. Facebook, Inc.*, No. 220-cv-9483 DMR, 2021 WL 4133753, at *10 (N.D. Cal. Sept. 10, 2021) (relying on *Birdsong*, post-*Khoja*, to conclude that "[b]ecause Plaintiff 'would have no valid claims unless the release agreement did not bar them,' the court may consider the 2008 Agreement on a motion to dismiss").

Here, because the FAC only references the Settlement Agreement briefly, *see* ECF No. 4 at 11-12, 18, and the FEHA and § 1981 discrimination, harassment, retaliation, and constructive discharge claims do not arise from the substance of the Settlement Agreement, Plaintiff's claims do not necessarily depend on that document.  Instead, Defendants seek to incorporate the Settlement Agreement for the sole purposes of creating a defense and to dispute facts in the complaint, which the Ninth Circuit has clearly indicated they cannot do.  *See Khoja*, 899 F.3d at 1002.

Because the Settlement Agreement was not incorporated by reference, and because it would be inappropriate to dismiss for failure to state a claim based on an affirmative defense that raises disputed issues of fact—whether the Settlement Agreement is invalid due to coercion, fraud, or duress—Defendants' motion to dismiss Plaintiff's claims based on the Settlement Agreement should be denied.  *See ASARCO, LLC*, 765 F.3d at 1004 (dismissal under 12(b)(6) is improper if the allegations of the complaint concerning the defense raise disputed issues of fact); ECF No. 4 at 11, 12; *see also* ECF No. 9 at 9, 10.  Additionally, because the Court declines to consider the Settlement Agreement at this stage in the case, the parties' arguments on issues concerning the validity of the Settlement Agreement and Plaintiff's release of her claims against Defendants by signing the Settlement Agreement are premature.

## 2.  Mediation Privilege

Defendants argue that Plaintiff cannot rely on any communication that occurred during the mediation to support Plaintiff's claims, *or* to evade application of the Settlement Agreement,

1   because such communication is subject to the mediation privilege.  ECF No. 5-1 at 16-17.

2   Specifically, Defendants argue that Plaintiff cannot rely on (a) Mediator Cheng's statements that

3   Plaintiff would be fired if she left the mediation, had waived her right to consult an attorney, was

4   unqualified for her job, and that Plaintiff's complaint with DFEH would not survive; and (b)

5   Bonnet's statement to Plaintiff that "you sign today or I'll fire you tomorrow."  *Id.* at 16.

6       Given that the Settlement Agreement will play no role in the substantive analysis of

7   Defendants' Rule 12(b)(6) motion, it may be tempting to avoid ruling on Defendants' mediation

8   privilege argument at this point in the case.  However, the issue remains potentially relevant at

9   this stage for two reasons:  First, what transpired at the mediation is relevant to the question of

10   whether Plaintiff has stated a claim that can be granted under § 1981.  Second, because the Court

11   is recommending that Plaintiff be granted leave to amend her otherwise faulty claims, it is

12   important she understand the extent to which she can rely on statements made during the

13   mediation in an amended pleading.  The Court thus addresses Defendants' mediation privilege

14   argument.

15       In support of their position on mediation privilege, Defendants cite *Folb v. Motion Picture*

16   *Industry Pension & Health Plans*, 16 F. Supp. 2d 1164, 1170-1181 (C.D. Cal. July 8, 1998).

17   However, Defendants confuse mediation privilege with confidentiality in compromise

18   negotiations.  As discussed below, under the correct framework, the alleged statements from the

19   mediation can be considered.

20       "'[C]onfidentiality' and 'privilege' are often used interchangeably in discussions of

21   mediation," however, they are "two distinct concepts":

22       'Confidentiality' refers to a duty to keep information secret, while 'privilege' refers
          to protection of information from compelled disclosure. . . . Communications are

23       confidential when the freedom of the parties to disclose them voluntarily is limited;
          they are privileged when the ability of third parties to compel disclosure of them, or

24       testimony regarding them, is limited.

25   *Molina v. Lexmark Int'l, Inc.*, No. CV 08-04796 MMM FMx, 2008 WL 4447678, at *10 (C.D.

26   Cal. Sept. 30, 2008)).  Recognizing this distinction, the court in *Molina* found that although the

27   defendant asserted reliance on federal mediation privilege and cited to *Folb*, the mediation

28   privilege discussed in *Folb* did not apply to a dispute about whether a former employer and

1    employee could rely on communications from *their mediation*. *Id.* at *1-3, 8 (*Folb* and its

2    progeny concerned situations in which a *third party* who did not participate in a formal mediation

3    sought *discovery* of mediation-related communications). Instead, the court applied "Rule 408 of

4    the Federal Rules of Evidence, which makes 'conduct or statements made in compromise

5    negotiations regarding the claim' inadmissible to prove liability." *Id.* at *11. The court explained

6    that unlike *Folb*'s mediation privilege (and traditional privileges such as the attorney-client

7    privilege), Rule 408 is primarily concerned with avoiding the chilling effect that potential

8    disclosure may have on a party to a communication, rather than the threat of compelled

9    discovery." *Id.*

10        The issue here is more akin to the issue in *Molina* than *Folb* because the present dispute is

11   whether confidentiality in compromise negotiations forbids Plaintiff from relying on

12   communication made during a mediation between her and her employer in the present case; it is

13   not a discovery dispute involving privilege over information related to a mediation between one

14   party and a third party.[5] Accordingly, Rule 408, rather than mediation privilege, applies.

15        Rule 408 prohibits the use of "conduct or a statement made during compromise

16   negotiations about the claim" to either prove or disprove liability of one of the parties. Fed. R.

17   Evid. 408(a). However, Rule 408 does not prohibit Plaintiff from presenting communication that

18   occurred during the mediation for another purpose, such as to allege and/or prove (1) the

19   invalidity of the confidentiality and settlement agreements, (2) that the mediation was not before a

20   neutral mediator, and (3) that some wrong was committed during the mediation. *See* Fed. R.

21   Evid. 408(b) (conduct or statements made during compromise negotiations about a claim may be

22   admitted into evidence for a purpose other than proving or disproving liability); *see also, United*

23   *States v. Zinnel*, 725 Fed. App'x 453, 459 (9th Cir 2018) (citations omitted) ("Rule 408 is

24   'inapplicable when the claim is based upon some wrong that was committed in the course of the

---

25   [5] Although the Court finds *Folb* inapplicable for other reasons, the court notes that *Folb* would
26   also likely be inapplicable because Plaintiff has alleged that the mediation was not before a
     *neutral* mediator. ECF No. 4 at 11 ("ACRC paid Cheng approximately $7,000 . . . to subject[]
27   Plaintiff to (7) hours of coercion to sign a severance agreement to end her employment at ACRC.
     Plaintiff requested several times to end the mediation and leave, and was informed by Cheng that
28   her employment would be terminated if she left . . .").

settlement discussions.'"); *Uforma/Shelby Business Forms, Inc. v. N.L.R.B.*, 111 F.3d 1284, 1293

(6th Cir. 1997) (quoting 23 Charles Alan Wright & Kenneth W. Graham, Jr., FEDERAL

PRACTICE AND PROCEDURE: EVIDENCE § 5314 (1st ed. 1980)) ("Rule 408

is . . . inapplicable when the claim is based upon some wrong that was committed in the course of

the settlement; e.g., libel, assault, breach of contract, unfair labor practice, and the like . . .

wrongful acts are not shielded because they took place during compromise negotiations"); *Carney*

*v. American University*, 151 F.3d 1090, 1095-96 (D.C. Cir. 1998) (settlement letters were

admissible because they were not offered to prove discrimination but to establish a separate

retaliation claim that arose during the negotiations); *Justice v. Meares*, 2021 WL 3410045, at *5

(E.D. Tenn. Aug. 4, 2021) ("extortionate threats during negotiations are not protected under Rule

408"); *Levenstein v. Salafsky*, 2002 WL 849594, at *1 (N.D. Ill. May 2, 2002) (evidence of

statements made during negotiations that are offered to show a pattern of coercion fall outside the

scope of Rule 408).

      Accordingly, the Court will not consider conduct or statements made during the August 6,

2019, mediation that serve no purpose other than to prove liability of the claims that existed

before the mediation but will consider the allegations concerning the conduct for other purposes,

such as whether some other wrong, such as constructive discharge or retaliation, was committed

during the mediation.[6]

## B. Defendant ACRC's Board

      Plaintiff names ACRC and ACRC's Board of Directors as two separate defendants.  ECF

No. 4 at 1, 4.  In their motion to dismiss, Defendants argue that ACRC's Board does not have

---

[6] In the FAC, Plaintiff briefly mentions the existence of a confidentiality agreement that was signed before mediation, ECF No. 4 at 11, but neither party provides more information on the content of this agreement or briefs the issue of whether the confidentiality agreement precludes Plaintiff from relying on conduct or statements made during the mediation.  Without the benefit of more information concerning the confidentiality agreement, the circumstances surrounding the signature of the agreement (e.g., voluntary, or coercive), and briefing on the issue, the Court is unable to rule whether the confidentiality agreement precludes Plaintiff from relying on conduct or statements made during the mediation.  However, given the plaintiff-favorable standard on a Rule 12(b)(6) motion, and that the confidentiality agreement might raise disputed issues of fact, the Court considers Plaintiff's allegations in the complaint concerning the conduct of the August 6, 2019, mediation to the extent it is permissible under Rule 408.

14

1  capacity to be sued because it is not a distinct legal entity separate from ACRC.  ECF No. 5 at 13.

2  Plaintiff's opposition does not respond to this argument.  *See* ECF No. 9.

3     A Rule 12(b)(6) motion may address a party's capacity to be sued.  *See Best Tore and*

4  *Service Centers, LLC v. Goodyear Tire & Rubber Co.*, No. 16-cv-6380 AB JPRx, 2017 WL

5  1017642 (C.D. Cal. Feb. 14, 2017); *Farina Focaccia & Cucina Italiana, LLC v. 700 Valencia*

6  *Street LLC*, No. 15-cv-2286 JCS, 2015 WL 4932640, at *5 (N.D. Cal. Aug. 18, 2015); *NRT Texas*

7  *LLC v. Wilbur*, No. 4:22-cv-02847, 2022 WL 18404989, at *2 n.1 (S.D. Texas Dec. 15, 2022).

8  Because ACRC is a corporation organized under the laws of California, state law governs the

9  Board's capacity to be sued.  *See* Fed. R. Civ. P. 17(b)(2)-(3).  California's Supreme Court has

10  not addressed whether a corporation's board may be sued as a separate legal entity. However,

11  California's Corporation Code only identifies a corporation or association as entities that may be

12  sued.  *See* Cal. Corp. Code § 105.  The Court is persuaded that ACRC's Board cannot be sued as

13  an entity separate from ACRC.  *See Siegler v. Sorrento Therapeutics, Inc.*, No. 2020-1435, 2021

14  WL 3046590, at *10 (Fed. Cir. July 20, 2021) ("[U]nder California law, a plaintiff may not sue a

15  corporation's board of directors as an entity separate from the corporation.").  Accordingly, the

16  undersigned recommends ACRC's Board be dismissed with prejudice.

17     **C. FEHA Claims**

18        **1. Exhaustion**

19     A plaintiff bringing claims under FEHA "must exhaust the statute's administrative

20  remedies before filing a lawsuit." *Harris v. County of Orange*, 682 F.3d 1126, 1135 (9th Cir.

21  2012).  "For purposes of FEHA, administrative remedies are exhausted by the filing of an

22  administrative complaint with the [DFEH] and obtaining from the DFEH a notice of right to sue."

23  *Id.* at 1136 (internal marks omitted).  Plaintiff must plead and prove timely exhaustion.  *Ayala v.*

24  *Frito Lay, Inc.*, 263 F. Supp. 891, 902 (E.D. Cal. 2017).

25     Here, Defendants argue that Plaintiff's FEHA claims should be dismissed because she has

26  not factually alleged that she has exhausted these claims.  ECF No. 5-1 at 14.  In her opposition,

27  Plaintiff responds that she attached a copy of her DFEH complaint to her FAC.  ECF No. 9 at 4.

28  Plaintiff also attaches DFEH's "Notice of Case Closure and Right to Sue" letter to her opposition.

*Id*. at 14-15.  Defendants reply that Plaintiff's opposition confirms she did not plead exhaustion in the FAC.  ECF No. 10 at 5.

The Court agrees that the FAC does not sufficiently plead pre-filing exhaustion of the FEHA claims.  But this deficiency can be cured by amendment, and the Court recommends dismissal with leave to amend.  *See Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

## 2.  Statute of Limitations

Defendants argue for the first time in their reply brief that Plaintiff's FEHA claims are time-barred because they were not brought within 90 days of the Equal Employment Opportunity Commission's ("EEOC") issuance of a right to sue notice, and therefore should be dismissed with prejudice.  ECF No. 10 at 5-6.  In support of their position, Defendants attach a copy of Plaintiff's right-to-sue notice from the EEOC.  *Id.* at 6.[7]  Even though Defendants may not have been aware of the factual predicate for this argument until Plaintiff attached a copy of her DFEH right to sue letter to her opposition brief, the Court will not definitively rule on this issue, as it was raised for the first time in a reply brief.  *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (finding that a district court did not commit clear error in failing to consider an argument raised for the first time in a reply brief).  However, unless Plaintiff can show in an amended complaint that the statute of limitations should be tolled, Plaintiff's FEHA claim will be precluded, for the reasons described here.

Under California law, upon issuance of a right-to-sue notice, a complaining party generally has one year from the date of the notice to file their lawsuit.  Cal. Govt. Code § 12965(c)(1)(C); *see also* ECF No. 9 at 14 ("If you choose to file a lawsuit in court, you must file your lawsuit in court within one year from the date of this letter.").  The one-year statute of

---

[7]  Defendants filed a request for judicial notice (RJN) of the EEOC right-to-sue notice pursuant to Federal Rule of Civil Procedure 201.  ECF No. 10-2.  The Court grants the RJN because the fact that the EEOC issued Plaintiff the notice on the date indicated by the notice "is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  *See* Fed. R. Civ. P. 201(b)(2).  Judicial notice is regularly granted on similar decisions by government agencies.  *See Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 435 (9th Cir.1992) (taking judicial notice of the existence of decisions of the California Public Utility Commission on force majeure claims).

1  limitations is tolled if: the complaint was concurrently filed with the EEOC and DFEH; DFEH

2  defers investigation to the EEOC; or DFEH issues a "right to sue notice" and defers the charge to

3  the EEOC.  Cal. Govt. Code § 12965(e)(1)(A)-(C).  If tolling applies, the statute of limitations

4  "expires when the federal right-to-sue period to commence a civil action expires, or one year

5  from the date of the right-to-sue notice by [DFEH], whichever is later."  *Id.* § 12965(e)(2).

6        In a letter dated February 24, 2020, DFEH sent Plaintiff a notice of right to sue.  ECF No.

7  9 at 14-15.  DFEH's letter stated Plaintiff had one year from the date of the letter to file a lawsuit.

8  *Id.* at 14.  It also indicated that DFEH deferred the case to the EEOC for further processing, *id.* at

9  14; *see also id.* at 16, thus tolling the statute of limitations.  In a letter dated September 10, 2020,

10  the EEOC notified Plaintiff that EEOC had concluded its investigation, was dismissing her

11  complaint, and issuing a right-to-sue notice.  ECF No. 10-2 at 4.  The EEOC letter further

12  informed Plaintiff that "if you want to pursue your charge, you may do so on your own by filing

13  suit in Federal District Court within 90 days of receiving the enclosed Notice of Right to Sue."

14  *Id.* (emphasis added).  According to Defendants, Plaintiff had until December 10, 2020, to file her

15  FEHA claims.  ECF No. 10 at 6.  Plaintiff did not file the present case until August 1, 2023, ECF

16  No. 1, almost three years after the 90-day period for filing such a suit expired.

17        Although it appears Plaintiff's action was filed outside the limitations period, the Court is

18  hesitant to dismiss the FEHA claims with prejudice at this time.  Defendant did not raise the issue

19  until its reply brief, and as a result, Plaintiff was deprived of the chance to respond to the statute

20  of limitations issue and/or raise any equitable tolling arguments.  *See Mitchel v. City of Santa*

21  *Rosa*, 695 F. Supp. 2d 1001, 1009 (N.D. Cal. 2010), *aff'd in part*, 476 F. App'x 661 (9th Cir.

22  2011) (dismissing FEHA claim with leave to amend where defendant raised statute of limitations

23  issue in reply brief, depriving plaintiff of an opportunity to raise equitable tolling arguments).

24  Because Plaintiff could potentially cure this deficiency in an amended complaint, the Court

25  recommends dismissal with leave to amend.  *See Noll*, 809 F.2d at 1448.

26        **D.  Section 1981 Claims**

27        Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall

28  have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  42

17

U.S.C. § 1981(a).  Plaintiff's § 1981 claims involve both her employment with ACRC and her right to contract after her employment ended.  Section 1981 covers both contexts.  *See Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1122 (9th Cir. 2008) (employment based § 1981 claim); *Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1145 (9th Cir. 2006) (non-employment based § 1981 claim); *see also Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476-77 (2006) (§ 1981 "protects the would-be contractor along with those who already have made contracts," and therefore protects against discrimination that "blocks the creation of a contractual relationship" that does not yet exist).

The elements of employment-related claims under § 1981 track those for parallel claims under Title VII.  *See Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847, 850 (9th Cir. 2004).  Plaintiff raises three types of employment-based claims: discrimination based on race, harassment based on race, and retaliation.  ECF No. 9 at 3.

To establish a prima facie case of employment discrimination, a plaintiff must show (1) she belongs to a protected class; (2) she was performing according to the employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees outside of his protected class.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  "While a plaintiff need not plead facts constituting all elements of a prima facie employment discrimination case in order to survive a Rule 12(b)(6) motion to dismiss, courts nevertheless look to those elements to analyze a motion to dismiss, so as to decide, in light of judicial experience and common sense, whether the challenged complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  *Achal v. Gate Gourmet, Inc*., 114 F. Supp. 3d 781, 796-97 (N.D. Cal. 2015).

"To establish a prima facie case of retaliation, a plaintiff must prove (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the two."  *Surrell v. Cal. Water Serv. Co*., 518 F.3d 1097, 1107 (9th Cir. 2008).

To state a hostile work environment claim, a plaintiff must allege that "(1) she was

subjected to verbal or physical conduct because of her race, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment." *Manatt v. Bank of America, NA*, 339 F.3d 792, 798 (9th Cir. 2003) (internal quotation marks omitted). "In considering whether the discriminatory conduct was severe or pervasive," a court looks to "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Johnson*, 534 F.3d at 1122 (cleaned up).

A non-employment claim under § 1981 involves a similar prima facie standard to the standard that applies to employment-based discrimination and retaliation claims. For such a non-employment claim, the prima facie case requires showing that the plaintiff (1) is a member of a protected class, (2) attempted to contract for certain services, and (3) was denied the right to contract for those services. *See Lindsey*, 447 F.3d at 1145 (9th Cir. 2006) (setting forth elements of a § 1981 claim in the non-employment context). A plaintiff must also allege "intentional discrimination on account of race," *Evans v. McKay*, 869 F.2d 1341, 1344 (9th Cir. 1989), and "initially plead and ultimately prove that, but for race, [she] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African Am. Owned Media*, 589 U.S. 327, 341 (2020).

### 1. Parties' Positions

Defendants argue that they cannot be held liable under § 1981 in either the employment context or non-employment context. Defendants seek dismissal with prejudice of Plaintiff's employment-based § 1981 claims against Crick, Bonnet, Rich-Banales and ACRC, which they argue are untimely under the applicable four-year statute of limitations. ECF No. 5-1 at 19-21. Defendants argue that the § 1981 claims against Crick and Rich-Banales are time-barred because the alleged conduct occurred prior to August 1, 2019, and Plaintiff does not allege any interactions with these individuals on or after that date (i.e. within the limitations period). ECF No. 5-1 at 19, 20. With respect to Bonnet and ACRC, Defendants state that the only allegedly unlawful actions after August 1, 2019, were: "(1) statements made to Plaintiff by Bonnet and

1   Mediator Cheng at the mediation to induce her to sign the Settlement Agreement and resign her

2   employment, and (2) Bonnet and the Board blocking Plaintiff from calling and emailing ACRC

3   staff and attending public Board meetings." ECF No. 5-1 at 20.  Defendants reason that Plaintiff

4   cannot state a cognizable § 1981 claim based on the alleged conduct at the mediation because of

5   mediation privilege and because plaintiff released her claims against ACRC and its employees

6   when she signed the Settlement Agreement.  *Id.* at 20, 21.

7        Defendants also argue that Plaintiff cannot state a cognizable § 1981 non-employment-

8   based claim because the allegation that she was prevented from making any future contract is

9   speculative and conclusory.  *Id.* at 21, 22.

10       In opposition, Plaintiff argues that her discrimination and retaliation claims are based on

11   the constructive discharge of her contractual relationship on August 9, 2019, which resulted from

12   unlawful, harassing, and adverse actions "sanctioned by the defendant."  ECF No. 9 at 3.  With

13   respect to her "racial harassment" claim, which is a hostile work environment claim, she argues it

14   is not time-barred under the "continuing violations doctrine."  *Id.*  Plaintiff argues that the

15   continuing violation doctrine applies because a "hostile work environment claim is composed of a

16   series of separate acts that collectively constitute one 'unlawful employment practice'" and "the

17   act of racial harassment [took] place after 08/01/2019 with destruction of Plaintiff's property."

18   *Id.*

19       In reply, Defendants argue that the FAC does not allege facts from which the continuing

20   violation can be invoked and repeat prior arguments.  ECF No. 10 at 11-16.  Defendants

21   add that Plaintiff cannot state a § 1981 claim because none of the statements made during the

22   mediation were racially derogatory.  *Id.*

23             **2.  Section 1981 Statute of Limitations**

24                   **a.  Standard**

25       The statute of limitations for § 1981 claims is four years.  28 U.S.C. § 1658(a); *Jones v.*

26   *R.R. Donnelley & Sons Co.*, 541 U.S. 369, 381-83 (2004).  The nature of the claim determines

27   what triggers the running of the four-year limitations period.  For *discrimination* and *retaliation*

28   claims, the discriminatory or retaliatory act "occurs" on the date of the employer's decision and

20

action.  This makes it easy to determine whether a claim is timely in such cases.  *See Delaware State College v. Ricks*, 449 U.S. 250, 258-59 (1980) (concluding that "the limitations period commenced to run when the tenure decision was made and plaintiff was notified" "even though one of the effects of the denial of tenure . . . did not occur until later"); *Green v. Brennan*, 578 U.S. 547 (2016) (the limitations period on a constructive discharge claim begins when the employee gives notice of their resignation).  In contrast, because a hostile work environment (harassment) claim arises from multiple acts, it cannot be said that it "occurs" on a specific date, and therefore presents a more complex circumstance.  *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).  In other words, discrimination and retaliation claims involve "discrete discriminatory or retaliatory acts," and "hostile work environment" claims involve "non-discrete acts."  *Id.* at 110; *Porter v. Cal. Dep't of Corrs.*, 419 F.3d 885, 893 (9th Cir. 2005).[8]

Workplace discrimination and retaliation claims are based on "discrete acts" "such as termination, failure to promote, denial of transfer, or refusal to hire."  *Morgan*, 536 U.S. at 114.  Each discrete act occurs on a particular day, the day that it happened, *id.* at 110; starts a new clock for filing charges alleging that act, *id.*; and is independently actionable, so long as the discrete act is not time-barred, *id.* at 114.  "[D]iscrete acts that fall within the statutory time period do not make timely acts that fall outside the time period," even when they are related.  *Id.* at 112, 113.  A plaintiff, however, is not barred from using those prior acts as background evidence in support of their timely filed charges.  *Id.* at 113.

Hostile work environment claims, which by their "very nature involve[] repeated conduct" that "occurs over a series of days or perhaps years," are based on a collection of non-discrete acts, such as "managers ma[king] jokes, perform[ing] racially derogatory acts, ma[king] negative comments regarding the capacity of blacks to be supervisors, and us[ing] various racial epithets."  *Id.* at 115, 117, 120, 121.  As a result, a hostile work environment claim is not time barred when "at least one act," "which constitutes part of the same unlawful employment practice," falls within the statute of limitations period.  *Id.* at 122.  To determine whether pre- and post-

---

[8]  Although *Morgan* and *Porter* involved Title VII claims, "legal principles guiding a court in a Title VII dispute apply with equal force in a § 1981 case."  *Manatt*, 339 F.3d at 797.

1    limitations acts "constitute[] part of the same unlawful employment practice," the court considers

2    whether the acts involved the same type of employment action, occurred relatively frequently, or

3    were perpetrated by the same individuals.  *Id.* at 120.

4         A constructive discharge, which "occurs when a person quits [their] job under

5    circumstances in which a reasonable person would feel that the conditions of employment have

6    become intolerable," can be based on a discrete act (which can be discriminatory or retaliatory),

7    and/or non-discrete acts, such as a hostile work environment.  *Draper v. Coeur Rochester, Inc.*,

8    147 F.3d 1104, 1110 (9th Cir. 1998); *see also Pennsylvania State Police v. Suder*, 542 U.S. 129,

9    149 (2004) (a hostile-work environment claim is a "lesser included component" of the "graver

10   claim of hostile-environment constructive discharge").  Although the employee rather than the

11   employer makes the decision to terminate the employment relationship, a constructive discharge

12   is in essence the same as a termination or actual discharge because the employee resigned in the

13   face of intolerable circumstances.  *See Green*, 578 U.S. at 555.  Like a termination or actual

14   discharge, "a constructive-discharge claim accrues—and the limitations period begins to run—

15   when the employee gives notice of his resignation, not on the effective date of that resignation."

16   *Green*, 578 U.S. at 564.

17            **b.  Analysis**

18        Plaintiff filed the present suit on August 1, 2023.  ECF No. 1.  Therefore, a cause of action

19   based on discrete acts that took place on or after August 1, 2019, will be timely.  A cause of

20   action based on non-discrete acts that took place before August 1, 2019, will be timely if at least

21   one act that constitutes part of the same unlawful employment practice occurred after August 1,

22   2019.

23        Because Plaintiff has not alleged any acts by Crick or Rich-Banalas during the limitations

24   period, but potentially could, the undersigned recommends dismissal with leave to amend

25   Plaintiff's § 1981 claim against these Defendants.  The § 1981 claims against ACRC and Bonnet,

26   however, require more discussion.

27   ////

28   ////

                                                    22

### i.  Discrete Acts

Plaintiff argues that Bonnet engaged in retaliation and discrimination against her at the mediation on August 6, 2019, when Bonnet and Cheng forced Plaintiff to release her claims against Defendants and resign because of the race discrimination complaints Plaintiff made against her manager and coworkers.  *See* ECF No. 9 at 3.  These discrete acts occurred after August 1, 2019, and within the limitations period.  They are therefore timely.

The Court rejects Defendant's argument that Plaintiff cannot state a cognizable § 1981 claim based on these discrete acts because of mediation privilege and because plaintiff released her claims against ACRC and its employees when she signed the Settlement Agreement.  For the reasons discussed in Section III.A, mediation privilege does not apply, confidentiality under Rule 408 would not preclude Plaintiff from disclosing conduct and statements made during the mediation for purposes of establishing some other wrong that occurred during the mediation (e.g. retaliation or constructive discharge), and the affirmative defense of release of claims is premature at this stage in the litigation.

Accordingly, Plaintiff's § 1981 claims for retaliation and constructive discharge should not be dismissed as untimely.

### ii.  Non-Discrete Acts

Plaintiff argues that the continuing violations doctrine applies to her §1981 racial harassment claim—in substance, a hostile work environment claim—and that a non-discrete act occurred after August 1, 2024, with the destruction of her property.  *Id.*  The Court is unable to discern what Plaintiff means by the destruction of her property and is unable to identify factual allegations regarding this in the FAC.  However, the Court has identified the following alleged non-discrete acts in the FAC: (1) sometime before May 16, 2019, Crick criticized, reprimanded, and ridiculed Plaintiff in private and public, told her that "her accent, pronunciation, manner of speaking, and tone was 'off putting,'" told her English is tricky and made references to ESL, directed her to provide unemployment benefits as incentives for non-black employees to resign" but not black employees, and ignored complaints about other employees' racist comments; (2) during a work training session, staff anonymously disclosed they associate black employees with

the "N" word; (3) during a separate work training session, a white trainer, humiliated black and Hispanic employees by "singl[ing] them out and put[ting them] in a separate group from the white employees to illustrate the disadvantages of being in a minority group";  (4) between February and August of 2019, Hill made racist comments about Asians, black and brown people, and about how people who looked like Plaintiff were better suited to work at Ikea; (5) on July 1, 2019, sometime after Plaintiff made a complaint against Hill, Hill verbally and physically attacked Plaintiff, yelling "I'm tired of your bullshit!" and threatening "You're not safe! You're not safe!"; (6) on July 2, 2019, Crick defended Hill's actions and accused Plaintiff of provoking Hill; (7) on July 23, 2019, Bonnet reprimanded Plaintiff for filing a complaint against Crick; (8) on July 30, 2019, Bonnet directed Plaintiff to appear at a mediation on August 6, 2019 under false pretenses; (9) at the mediation on August 6, 2019, Cheng told Plaintiff that she was unqualified to do her job and "impressed upon Plaintiff that her complaint with DFEH would not survive."  ECF No. 4 at 6-11.

Again, the Court rejects Defendant's arguments that Plaintiff cannot rely on conduct or statements made during the mediation.  The Court further rejects Defendant's argument that the non-discrete act within the limitations period must be racially derogatory.  *See e.g., Porter*, 419 F.3d at 894 (in ruling that the § 1981 hostile work environment claim was timely, the court considered the non-discrete act of defendant "glaring at [plaintiff] in an intimidating fashion" during the limitations period to pull in pre-limitations period non-discrete acts of sexual harassment).  For a non-discrete act during the limitations period to pull in other non-discrete acts during the pre-limitations period, the non-discrete act needs to involve the same type of "intimidating or demeaning" conduct on the same basis (e.g. sex, gender, race).  *Id.* (finding that defendant glaring at plaintiff in an intimidating fashion during the limitations period involved the same type of intimidating and demeaning behavior towards female employees who do not submit to demands for sexual favors).

The remaining issue is whether any of the non-discrete acts that occurred on August 6, 2019, involve the same type of employment action, occurred frequently, or were perpetrated by the same individuals such that they could be used to pull in pre-limitations period non-discrete

acts.  The Court concludes that they cannot.  None of the pre-August 1, 2019, acts were

perpetrated by Cheng.  Moreover, there is no indication that Cheng's statement that Plaintiff was

unqualified to do her job involve the same type of employment action, racial harassment, because

Plaintiff alleges that Cheng stated Plaintiff "was unqualified to do her job because she (Plaintiff)

used intermittent leave under Family Medical Leave Act and also requested reasonable

accommodations at work."  ECF No. 4 at 11.  Accordingly, Plaintiff's racial harassment claim is

time-barred.

Because it is possible additional non-discrete acts occurred during the limitations period

and were simply not alleged, the undersigned recommends the Court dismiss without prejudice

Plaintiff's racial harassment—hostile work environment—claim and grant Plaintiff leave to

amend.  *Noll*, 809 F.2d at 1448 ("Plaintiffs appearing in pro se are to be given leave to amend

unless it is clear that amendment would be futile.").

### 3.  Section 1981 Claim in a Non-employment Context

#### a.  Standard

To state a § 1981 claim in a non-employment context, Plaintiff must allege that (1)

plaintiff "is a member of a protected class," (2) plaintiff "attempted to contract for certain

services," and (3) plaintiff "was denied the right to contract for those services."  *Lindsey*, 447

F.3d at 1145.  Plaintiff must also plausibly allege "intentional discrimination on account of race,"

*Evans*, 869 F.2d at 1344, and "initially plead" that "but for race, [she] would not have suffered the

loss of a legally protected right."  *Comcast Corp.*, 589 U.S. at 341.

#### b.  Analysis

Defendants argue that Plaintiff cannot state a cognizable § 1981 claim based on alleged

conduct that occurred after the mediation because "[t]he FAC does not factually allege that

Plaintiff ever actually attempted to contact anyone at ACRC or the Board for the purposes of

receiving services as a consumer or becoming a vendor that provides services for ACRC.  ECF

no. 5-1 at 21.  Instead, the FAC alleges that after Plaintiff's employment relationship ended with

ACRC, Plaintiff contacted and attempted to contact the ACRC's Board "for the purpose of

complaining about the actions of Bonnet, Rich-Banales, and Crick."  *Id.*  Defendants further

1   argue that Plaintiff has failed to allege facts that her race was the "but for" cause of ACRC's

2   Board's decision to ban her from their meetings.  *Id.* at 22.

3      The Court agrees that Plaintiff has not alleged an impaired contractual relationship as

4   required to state a cognizable claim under § 1981.  *See Domino's Pizza*, 546 U.S. at 476 ("Any

5   § 1981 claim . . . must initially identify an impaired contractual relationship . . . under which the

6   plaintiff has rights.").  Plaintiff's FAC does not identify an attempt to contract that was denied.

7   *See* ECF NO. 4 at 13.  For example, she does not allege that she made any attempt to receive

8   services from ACRC or provide services as a vendor.  Instead, she merely alleges that by banning

9   her from ACRC's Board meetings she suffered a possible loss of future contract opportunity to

10  receive future services and/or make contracts as a vendor.  *Id.*  Such conclusory and speculative

11  allegations are insufficient to state a cognizable claim under § 1981.  *See Morris v. Dillard Dep't*

12  *Stores, Inc.*, 277 F.3d 743, 753 (5th Cir. 2001) (the plaintiff's claim that banning her from the

13  store prevented her from making a contract with the store was too speculative because the

14  plaintiff presented no evidence "indicating she made any tangible attempt to purchase, or to

15  return, specified goods at the store, or to enter any other contractual agreement with the [store]");

16  *Johnson v. OfficeMax, Inc.*, No. 2:11-cv-2578-MCE-JFM, 2011 WL 6141280, at *4 (E.D. Cal.

17  2011) ("[P]laintiff's claim that he was denied the opportunity to purchase by being kicked out of

18  the store fails as speculative and insufficient because plaintiff does not demonstrate he would

19  have attempted to make a purchase even if he was not ejected from the store. . . . [T]he allegations

20  only establish that plaintiff suffered a possible loss of a future contract opportunity," not an

21  "actual loss of a contract interest.").  Moreover, Plaintiff fails to put forth any allegations that "but

22  for" her race, ACRC's Board would not have banned her from the Board's public meetings or

23  prevented her from receiving services and/or making contracts as a vendor to offer services.

24     Accordingly, the undersigned recommends dismissal of Plaintiff's § 1981 claim based on

25  ACRC Board's banning her from public Board meetings.  Although it seems very unlikely that

26  Plaintiff could cure these defects through amendment, it is not inconceivable that she could.

27  Given the generous leave to amend standard for pro se applicants, and that the undersigned is

28  recommending dismissal with leave to amend other claims, the undersigned similarly

1  recommends granting Plaintiff leave to amend this § 1981 claim.

2  **IV.   Leave to Amend**

3  Because Plaintiff could conceivably cure the deficiencies in some of her claims through an

4  amended complaint, the undersigned recommends the Court grant Plaintiff leave to amend the

5  following claims: Plaintiff's FEHA claims against all Defendants, Plaintiff's § 1981 claims

6  against Crick and Rich-Banales, and Plaintiff's § 1981 hostile work environment and § 1981 non-

7  employment-based claims against Bonnet and ACRC.  *See Noll v. Carlson*, 809 F.2d at 1449.

8  Should this recommendation be adopted, Plaintiff is informed that the Court cannot refer

9  to a prior pleading to make an amended complaint complete.  Local Rule 220 requires that an

10  amended complaint be complete in itself, without reference to any prior pleading.  This is

11  because, generally, an amended complaint supersedes any prior complaints.  *Lacey v. Maricopa*

12  *County*, 693 F.3d 896, 927 (9th Cir. 2012) ("[T]he general rule is that an amended complaint

13  super[s]edes the original complaint and renders it without legal effect.").  Once plaintiff files an

14  amended complaint, any previous complaints no longer serve any function in the case.  Therefore,

15  in an amended complaint, as in an original complaint, each claim and the involvement of each

16  defendant must be sufficiently alleged.

17  **V.   Plain Language Summary of these Findings and Recommendations for a Pro Se**
18  **Litigant**

19  The undersigned is recommending that the motion to dismiss against you be granted with

20  respect to: your claims against ACRC's Board; your FEHA claims against all Defendants; your

21  § 1981 claims against Crick and Banales; and your § 1981 hostile work environment and non-

22  employment-based claims against Bonnet and ACRC.  Because it is possible there are additional

23  facts you could allege to establish all of these claims, except for the claims against ACRC's

24  Board, the undersigned is recommending that you be given leave to amend these claims.

25  The undersigned is recommending that the motion to dismiss be denied with respect to

26  your § 1981 claims for retaliation and constructive discharge.

27  ////

28  ////

**VI.    Conclusion**

Accordingly, IT IS HEREBY ORDERED that:

1.    Defendants' request for judicial notice (ECF No. 10-2) is GRANTED; and

2.    Defendants' request to incorporate by reference the Settlement Agreement (ECF No. 5-1 at 29-32) is DENIED.

IT IS FURTHER RECOMMENDED that:

1.    Defendant's Motion to Dismiss (ECF No. 5) be GRANTED in part and DENIED in part as follows:

  a.   GRANTED as to Plaintiff's claims against Defendant ACRC's Board;

  b.   GRANTED as to Plaintiff's FEHA claims against all Defendants;

  c.   GRANTD as to Plaintiff's § 1981 claims against Defendants Crick and Banales;

  d.   GRANTED as to Plaintiff's § 1981 hostile work environment claim against Bonnet and ACRC;

  e.   GRANTED as to Plaintiff's § 1981 non-employment-based claim against Defendants Bonnet and ACRC;

  f.   DENIED as to Plaintiff's § 1981 retaliation claim against Defendants Bonnet and ACRC;

  g.   DENIED as to Plaintiff's § 1981 constructive discharge claim against Defendants Bonnet and ACRC;

2.    Dismissal of Plaintiff's FEHA claims, § 1981 claims against Defendants Crick and Banales, § 1981 hostile work environment claims against Bonnet and ACRC, and § 1981 non-employment-based claims against Bonnet and ACRC be without prejudice.

3.    Plaintiff be granted thirty (30) days after the adoption of these findings and recommendations to file an amended complaint or inform the Court on her decision to proceed with the claims that were not dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14)

days after being served with these findings and recommendations, either Party may file written objections with the Court.  Such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Local Rule 304(d).  The Parties are advised that failure to file objections within the specified time may waive the right to appeal the Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 9, 2024

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

29