UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARON S. CHAND,<br>Plaintiff,<br>v.<br>ALTA CALIFORNIA REGIONAL CENTER, et al.,<br>Defendants. | No. 2:23-cv-1583 DC-SCR<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Plaintiff Sharon S. Chand, who identifies as Fijian-Indian, is proceeding pro se in this employment discrimination action against Alta California Regional Center ("Alta"), Jennifer Lynn Crick, Philip Bonnet, and Lori Rich-Banales. The case is referred to a Magistrate Judge pursuant to Local Rule 302(c)(21). ECF No. 12. Before the Court is Defendants' motion to dismiss the Second Amended Complaint ("SAC") for failure to state a claim upon which relief can be granted. ECF No. 42. Plaintiff has also moved for leave to file a Third Amended Complaint ("TAC"). ECF No. 46.

For the reasons explained below, the undersigned recommends dismissal of Plaintiff's claims under the Fair Employment Housing Act ("FEHA"); dismissal of Plaintiff's discrimination claims under 42 U.S.C. § 1981, but not her § 1981 claims for retaliation, constructive discharge, or hostile work environment; and denial of Plaintiff's motion to file a TAC. The undersigned also

vacates the hearing on Plaintiff's motion, pending the adoption of these Findings and Recommendations.

## I. BACKGROUND

### A. Procedural History

Plaintiff commenced this action on August 1, 2023, and filed a First Amended Complaint ("FAC") on October 25, 2023. ECF Nos. 1, 4. Defendants moved to dismiss the FAC. ECF No. 5. The undersigned recommended granting Defendants' motion with leave to amend as to claims raised under (1) FEHA against all Defendants; (2) 42 U.S.C. § 1981 against Crick and Rich-Banales; and (3) 42 U.S.C. § 1981 against Bonnet and Alta for both the creation of a hostile work environment and for non-employment reasons. ECF No. 15 at 28. But the undersigned recommended denying the motion as to claims raised under 42 U.S.C. § 1981 against Bonnet and Alta for retaliation and constructive discharge. *Id.* The District Judge adopted these recommendations on October 6, 2025. ECF No. 32.

Plaintiff filed her SAC on November 3, 2025. ECF No. 33. On December 23, 2025, Defendants moved to dismiss the SAC. ECF No. 42. After briefing, the undersigned heard the motion on February 5, 2026. ECF Nos. 43, 44. On July 27, 2026, Plaintiff moved for leave to file a TAC, primarily to incorporate the arguments raised in her motion to dismiss into the pleadings. ECF No. 46 at 4-5. Defendant filed an opposition on August 10, 2026, to which Plaintiff replied on August 20. ECF Nos. 48-49.

### B. Second Amended Complaint

The SAC, filed November 3, 2025, alleges that Plaintiff was an Alta Human Resources Generalist supervised by Defendant Jennifer Lynn Crick. Carson Elizabeth Carter, Julia Marcele Hill and Nicole Adriana-Dacus were fellow Human Resources Generalists. ECF No. 33 at 4. When hired on November 1, 2016, Plaintiff was told she would receive a raise upon completing her six-month probationary period. ECF No. 33 at 4-5. Aside from not getting this raise—despite her coworkers getting it—Plaintiff was treated worse than them. *Id.* at 5. Rather than being given specific tasks like they were, she was given the larger portion of their work and required to provide coverage for Caucasian employees. *Id.* Crick would reprimand Plaintiff if

she refused this work, even when it meant working through her meal breaks and significantly after business hours had ended. *Id.* Plaintiff was also the only employee Crick would criticize, swear towards, and mock her accent and imperfect grasp on the English language. *Id.* at 6. Crick blamed Plaintiff for a conflict with Adriana-Dacus, making it appear as though Adriana-Dacus was the victim rather than the aggressor, while doing nothing to prevent Hill's harassment of Plaintiff from February 2019 through August 2019. *Id.* at 6.

On May 16, 2019, Plaintiff filed an internal complaint against Crick. *Id.* at 4. On June 6, Hill yelled at and assaulted Plaintiff, who then filed a complaint with Defendants Bonnet and Rich-Banales, who at the time were the Executive Director and Deputy Director, respectively. *Id.* at 7-8. The next day, Crick consoled Hill and accused Plaintiff of instigating. *Id.* at 8. Plaintiff emailed Rich-Banales about this, but he never responded. *Id.* Hill was never placed on administrative leave for her conduct, but Plaintiff was on July 19, 2019. *Id.* at 12-13.

On July 23, 2019, Bonnet sent Plaintiff findings as to the complaints against both Crick and Hill. *Id.* at 22. Independent investigator Jennfier Shaw had found that Plaintiff was the only employee accusing Crick of racial discrimination, and no evidence suggested that their adverse interactions were in fact motivated by racial or ethnic animus. *Id.* Hill's conduct was racially motivated, but credible witnesses said that Crick had successfully taken steps to address it. *Id.* Ultimately, Plaintiff's complaints of discrimination and a hostile work environment were found to be unsubstantiated. *Id.*

Upon giving the findings to Plaintiff, Bonnet reprimanded plaintiff for filing the complaint. *Id.* at 12. He said no one else had a problem with Crick, whose comments about Plaintiff's "ESL status" were supposedly compliments.[1] *Id.* He added that coworkers had found Plaintiff unsafe, wrote statements in defense of Crick, and threatened to quit if Plaintiff was allowed back from leave. *Id.* at 13. Bonnet offered to pay Plaintiff to quit and threatened to reassign her outside the HR unit. *Id.* at 12-13. Rich-Banales heard the whole conversation and did not object. *Id.* at 13. Bonnet and Rich-Banales again tried to get Plaintiff to quit during a

[1] ESL here means "English as a second language."

phone call on July 24, but hung up when Plaintiff told them such coercion was illegal and threatened to file a complaint with the state. *Id.* at 13-14.

On August 6, 2019, Phyllis Cheng, former director of the California Civil Rights Department,[2] oversaw a mediation between Plaintiff and Alta. *Id.* at 14. During this mediation, various disparaging statements by white colleagues were read aloud to make it sound like Plaintiff was dangerous and not wanted in the workplace. *Id.* at 11. Cheng also waited until the middle of the mediation to disclose she had a professional relationship with Alta's in-house counsel, Bruce Sarchet, which the SAC frames as a conflict of interest. *Id.* at 15.

Cheng presented Plaintiff with a settlement agreement on Alta's behalf, which would terminate her employment and waive her right to sue or talk about the company. *Id.* at 14. Plaintiff tried to leave the seven-hour mediation multiple times without signing this agreement, but Cheng made it clear that Plaintiff would be fired if she did. *Id.* at 14. Cheng eventually brought Bonnet into the room, who directly said to Plaintiff "you sign the settlement today or I'll fire you tomorrow." *Id.* at 14-15. Meanwhile, Cheng abused her power as a former state official by telling Plaintiff that her anticipated claim against Alta under state law would not survive. *Id.* at 14-15. She also said that by signing a confidentiality agreement beforehand, Plaintiff had waived the right to consult a lawyer. *Id.* at 14. Plaintiff therefore signed the agreement, terminating her employment. *Id.* at 15. She was then escorted to her office to gather her things, where she discovered someone had vandalized the office, despite only Human Resources staff having access. *Id.* at 11.

On August 12, 2019, Plaintiff visited the Civil Rights Department office in Elk Grove and discussed what happened at the mediation. *Id.* at 15. She learned that Senate Bill ("SB") 1300 prohibited much of what happened to her during the mediation. *Id.* Not only did it require an employer to inform the employee of her right to seek representation during mediation, but it prohibited any agreement that waives claims under FEHA or includes an anti-disparagement clause. *Id.* More broadly, a settlement agreement that falls under SB 1300 must be "voluntary,

[2] Cheng headed the department when it was known as the Department of Fair Employment and Housing.

deliberate, and informed," which the SAC argues was impossible given that Alta used threats to compel Plaintiff to sign an agreement that was drafted before the mediation even began. *Id.* at 16. Furthermore, the payment she received under the settlement agreement consisted of just the backpay she had been owed for months. *Id.* The agreement also violated the National Labor Relations Act ("NLRA") based on the same broad non-disparagement and confidentiality provisions, along with the Older Workers Benefit Protection Act ("OWBPA") for failure to provide time to consider the proposed agreement. *Id.*

Crick continued to speak negatively about Plaintiff following her termination, and gave Caucasian employees her email address so they could continue to abuse her in writing. *Id.* at 11. From October 2019 to September 2022, Plaintiff tried to approach Alta's Board of Directors multiple times about her discharge, the racial abuse, unpaid wages, and other misconduct. *Id.* at 5, 16. Bonnet blocked her emails and calls, the Board summarily dismissed her complaints, and ultimately she was banned from attending public meetings after being muted during one of them to prevent her from airing grievances. *Id.* at 5-6, 16-17.

The SAC raises claims under FEHA and § 1981.[3] *Id.* at 3. As to exhaustion of administrative remedies, based on a conflict of interest created due to Cheng's involvement, the California Civil Rights Department deferred the matter to the Equal Employment Opportunity Commission ("EEOC") in February 2020, which then issued a right-to-sue letter in September 2020. *Id.* at 17-18. The SAC further contends that the statute of limitations for such claims should be tolled because Alta threatened to pursue damages against Plaintiff on October 18, 2019 for her breach of the settlement agreement's non-disparagement clause. *Id.* at 18. Aside from being afraid of such repercussions, Plaintiff was misled by Cheng into believing that mediation privilege would prevent her from using the conversations that occurred therein to prove she was coerced into signing the settlement agreement. *Id.* at 18-19. The SAC seeks back pay and other

[3] Defendants' motion to dismiss alleges that Plaintiff has failed to plead the elements of a 1981 claim based on the impairment of a contractual relationship, rather than on Plaintiff's employment. ECF No. 42 at 12-13. The Court does not read the SAC as purporting to include one, and as Defendants note, Plaintiff does not attempt to dispute this when opposing the motion to dismiss. ECF No. 43; ECF No. 44 at 5.

compensatory damages; punitive damages based on intentional, egregious and malicious conduct; and attorney's fees and costs. *Id.* at 20.

## II. LEGAL STANDARDS

A defendant may move to dismiss a claim under Rule 12(b)(6) if the allegation "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense," *Iqbal*, 556 U.S. at 679, and to "draw all reasonable inferences in favor of the nonmoving party." *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am*., 768 F.3d 938, 945 (9th Cir. 2014) (internal quotation marks omitted). Stating a claim "requires more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. The factual allegations must be sufficient to "raise a right to relief above the speculative level" and "raise a reasonable expectation that discovery will reveal evidence" needed to support the claim. *Id*. at 556.

On a Rule 12(b)(6) motion, the court may consider all materials incorporated into the complaint by reference, as well as evidence properly subject to judicial notice. *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 617-18 (9th Cir. 2022). "Ultimately, dismissal is proper under Rule 12(b)(6) if it appears beyond doubt that the non-movant can prove no set of facts to support its claims." *Boquist*, 32 F.4th at 773–74 (internal citation and quotation marks omitted) (cleaned up).

A pro se plaintiff's factual allegations are interpreted liberally on a 12(b)(6) motion, and the court must apply a less stringent pleading standard than if the plaintiff was represented by counsel. *See Haines v. Kerner,* 404 U.S. 519, 520 (1972). A pro se litigant is entitled to notice of

the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. *See Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012).

## III. JUDICIAL NOTICE

A court may judicially notice facts when they are "not subject to reasonable dispute because," *inter alia*, they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). The court may take such judicial notice either on its own or upon request to do so by a party that supplies the court with sufficient information. Fed. R. Evid. 201(c)(1)-(2). When judicially noticing that a document and its contents exist, the court generally does not take the statements within such a document as true. *See Brookfield Property Group, LLC v. Liberty Mutual Fire Insurance Co.*, 679 F.Supp.3d 971, 977 (C.D. Cal. 2023) (citing *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 999 (9th Cir. 2018)). Courts may also judicially notice facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Jespersen v. Harrah's Operating Co., Inc.*, 444 F.3d 1104, 1110 (9th Cir. 2006) (en banc).

Defendants request judicial notice of the docket and filings in *Chand v. Regan*, Case No. 3:21-cv-07773-RS, currently pending in the Northern District of California. ECF No. 42-2. Defendants argue that *Chand v. Regan*, which Plaintiff pursued while the statute of limitations on the claims in the instant case were running, show that the statute of limitations should not be tolled. ECF No. 42 at 14. Plaintiff questions the relevance of this case because, *inter alia*, the barriers that allegedly prevented her from timely bringing this action did not exist in *Chand v. Regan*. ECF No. 43 at 7-8. These arguments simply challenge the merits of the arguments of Defendants' motion to dismiss itself. Plaintiff does not allege that the exhibits inaccurately portray the filings in the Northern District. The request for judicial notice is therefore granted.

## IV. ANALYSIS

### A. <u>The Statute of Limitations under FEHA Should Not Be Tolled</u>

The SAC alleges that Plaintiff obtained her right-to-sue letter from the EEOC in September 2020. ECF No. 33 at 17-18, 35. Defendants first argue that Plaintiff was required to bring suit within 90 days of this letter, yet this action was not filed until August 2023. ECF No.

33 at 35.

Under California law, upon issuance of a right-to-sue notice, a complaining party generally has one year from the date of the notice to file their lawsuit. Govt. Code § 12965(c)(1)(C). The one-year statute of limitations is tolled if the complaint was concurrently filed with the EEOC and DFEH, DFEH defers investigation to the EEOC, or DFEH issues a "right to sue notice" and defers the charge to the EEOC. Govt. Code § 12965(e)(1)(A)-(C). If tolling applies, the statute of limitations "expires when the federal right-to-sue period to commence a civil action expires, or one year from the date of the right-to-sue notice by [DFEH], whichever is later." Govt. Code § 12965(e)(2).

Defendants raised this argument in their reply brief for the motion to dismiss the FAC. ECF No. 15 at 16 (citing ECF No. 10 at 5-6). The Court chose not to rule on this argument at the time because it was first raised in a reply brief, but informed Plaintiff that her SAC would need to show that the statute of limitations should be tolled. ECF No. 15 at 16 (citing *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007)).

Plaintiff's current argument[4] for tolling the statute of limitations hinges on the fact that the settlement agreement with Alta included a "blanket release obtained through fraud[.]" ECF No. 43 at 7. Specifically, she argues that because Sacramento County legal services were not available during the pandemic, she could not invalidate the settlement's waiver under California Civil Code § 1542 until after the 90-day period had lapsed. ECF No. 43 at 4. This argument fails for two reasons.

First, the SAC alleges that she first learned on August 12, 2019 that the waiver was unenforceable under SB 1300. ECF No. 33 at 15-16. Upon receiving the EEOC's right-to-sue letter, Plaintiff had what she needed to bring suit under FEHA. She could have contested the waiver's enforceability if Defendants used it to assert an affirmative defense. She has not identified any mechanism to try to eliminate the effects of the waiver before filing suit. There

[4] Both parties ignore that because the DFEH right-to-sue letter was issued in February 2020 (ECF No. 33 at 32), the one-year statute of limitations expired in February 2021, *after* the 90-day statute of limitations based on the EEOC's September 2020 letter. Because this action was filed in 2023, however, that distinction is not dispositive.

was thus no basis for tolling under the theory that she had to wait for something else to be done before filing suit.

Second, Defendants include a copy of the August 2019 settlement agreement with their motion to dismiss. ECF No. 42 at 27.[5] The waiver language required Plaintiff to dismiss her DFEH complaint regarding her dispute with Alta and prohibited her from seeking a DFEH right-to-sue notice. ECF No. 42 at 26-27. Despite this, the SAC includes a February 2020 right-to-sue letter from the DFEH (ECF No. 33 at 32), as well as a September 2020 letter from the EEOC following deferral from the DFEH (ECF No. 33 at 34-35). Plaintiff now effectively argues that she knew enough to seek relief from the DFEH (despite the settlement agreement prohibiting precisely that action), but not enough to bring a civil action once she had the right to sue, when both involve the same waiver. This is an untenable position.

Based on the allegations in the SAC, the statute of limitations for FEHA claims should not be tolled to make the SAC's FEHA claims timely. These claims should therefore be dismissed.

B. <u>The Statute of Limitations under 42 U.S.C. § 1981 Precludes Select Claims</u>

Section 1981 entitles everyone regardless of race to "the same right… to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property[.]" Defendants argue that because the statute of limitations for such claims is four years, any claims based on conduct before August 1, 2019 are time-barred. ECF No. 42 at 9-10 (citing 28 U.S.C. § 1658(a)); *see also Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 381-83 (2004). As explained below, only some of Plaintiff's theories of liability under § 1981 may be timely.

1. <u>Standard of Law</u>

The nature of the claim determines what triggers the running of the four-year limitations period for claims under § 1981. For *discrimination* and *retaliation* claims, the discriminatory or retaliatory act "occurs" on the date of the employer's decision and action. This makes it easy to

[5] The Court may consider a non-judicially noticed document attached to a Rule 12(b)(6) motion to dismiss if "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Khoja*, 899 F.3d at 1002 (citation and quotation omitted). Plaintiff referred extensively to the settlement agreement and it lies at the center of some of her claims.

determine whether a claim is timely in such cases. *See Delaware State College v. Ricks*, 449 U.S. 250, 258-59 (1980) (concluding that "the limitations period commenced to run when the tenure decision was made and plaintiff was notified" "even though one of the effects of the denial of tenure . . . did not occur until later"); *Green v. Brennan*, 578 U.S. 547 (2016) (the limitations period on a constructive discharge claim begins when the employee gives notice of their resignation). In contrast, because a *hostile work environment* claim—i.e., a claim about workplace harassment—arises from multiple acts, it cannot be said that it "occurs" on a specific date, and it therefore involves more complexity. *See AMTRAK v. Morgan*, 536 U.S. 101 (2002). In other words, discrimination and retaliation claims involve "discrete discriminatory or retaliatory acts," and "hostile work environment" claims involve "non-discrete acts." *Id.* at 110; *Porter v. Cal. Dep't of Corrs.*, 419 F.3d 885, 893 (9th Cir. 2005).[6]

Workplace discrimination and retaliation claims are based on "discrete acts" "such as termination, failure to promote, denial of transfer, or refusal to hire." *Morgan*, 536 U.S. at 114. Each discrete act occurs on a particular day, the day that it happened, *id.* at 110; starts a new clock for filing charges alleging that act, *id.*; and is independently actionable, so long as the discrete act is not time-barred, *id.* at 114. "[D]iscrete acts that fall within the statutory time period do not make timely acts that fall outside the time period," even when they are related. *Id.* at 112, 113. A plaintiff, however, is not barred from using those prior acts as background evidence in support of their timely-filed charges. *Id.* at 113.

Hostile work environment claims, which by their "very nature involve[] repeated conduct" that "occurs over a series of days or perhaps years," are based on a collection of non-discrete acts, such as "managers ma[king] jokes, perform[ing] racially derogatory acts, ma[king] negative comments regarding the capacity of blacks to be supervisors, and us[ing] various racial epithets." *Id.* at 115, 117, 120, 121. As a result, a hostile work environment claim is not time barred when "at least one act," "which constitutes part of the same unlawful employment practice," falls within the statute of limitations period. *Id.* at 122. To determine whether pre- and post-

---

[6] Although *Morgan* and *Porter* involved Title VII claims, "legal principles guiding a court in a Title VII dispute apply with equal force in a § 1981 case." *Manatt*, 339 F.3d at 797.

limitations acts "constitute[] part of the same unlawful employment practice," the court considers whether the acts involved the same type of employment action, occurred relatively frequently, or were perpetrated by the same individuals. *Id.* at 120.

A constructive discharge, which "occurs when a person quits [their] job under circumstances in which a reasonable person would feel that the conditions of employment have become intolerable," can be based on a discrete act (which can be discriminatory or retaliatory), and/or non-discrete acts, such as a hostile work environment. *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1110 (9th Cir. 1998); *see also Pennsylvania State Police v. Suder*, 542 U.S. 129, 149 (2004) (a hostile-work environment claim is a "lesser included component" of the "graver claim of hostile-environment constructive discharge"). Although the employee, rather than the employer, makes the decision to terminate the employment relationship, a constructive discharge is in essence the same as a termination or actual discharge because the employee resigned in the face of intolerable circumstances. *See Green*, 578 U.S. at 555. Like a termination or actual discharge, "a constructive-discharge claim accrues—and the limitations period begins to run—when the employee gives notice of his resignation, not on the effective date of that resignation." *Green*, 578 U.S. at 564.

2. Post-Probationary Salary

Plaintiff first argues that the statute of limitations should not preclude a discrimination claim based on Alta's failure to provide her the same pay raise as her white colleagues once she completed her six-month probationary period. ECF No. 43 at 5. Superiors like Crick stopped giving this pay raise to new employees after Plaintiff objected to the differential treatment, but white coworkers like Adriana-Dacus who already received this pay bump continued to benefit from it. *Id.* Plaintiff argues that this discriminatory act persisted through August 9, 2019 – the date of her last paycheck – and is therefore actionable. *Id.*

As Defendants note, however, this improperly frames the discriminatory act giving rise to that claim. ECF No. 44 at 4. As discussed above, *Morgan* distinguished between a "present violation" and "mere continuity" between a past violation and its current effects based on an otherwise fair system. 536 U.S. at 112 (citing *United Air Lines v. Evans*, 431 U.S. 553, 558).

The discriminatory act at issue here occurred when Plaintiff should have received a raise after six months working for Alta, in 2017, but did not. That this meant every paycheck since then was lower than it should have been did not make it a continuing violation. A 1981 claim based on Alta's failure to give Plaintiff a raise is untimely.

3. Hostile Work Environment, Retaliation, and Constructive Discharge

Defendants admit that for Plaintiff's hostile work environment claim to be timely, only one act in "the same unlawful employment practice" needs to postdate August 1, 2019. ECF No. 42 at 10 (quoting *Morgan*, 536 U.S. at 120). They argue, however, that the one event that falls within this statute of limitations – the arbitration – inherently involves statements made *by* Cheng as the mediator rather than *by* Defendants or any Alta employee. ECF No. 42 at 10. At most, Defendants argue, Cheng read Plaintiff disparaging statements by Defendants about Plaintiff, but Cheng herself was not directing these comments to her. *Id.* at 11. Nor was Cheng involved in making the original disparaging comments to Plaintiff before August 2019. ECF No. 44 at 4.

Plaintiff argues that this is not the only conduct that falls within the statute of limitations. Although she was first placed on administrative leave in July 2019, that leave lasted through August 9. ECF No. 43 at 6. Plaintiff argues that being placed on leave by Bonnet, Rich-Balanes, and Crick, and having her requests to return to work denied until the mediation finalized her termination, helped create "an intimidating, hostile and abusive atmosphere significantly disrupting Plaintiff's job performance and benefits." *Id.* Even if at least one of the requests to return to work occurred after August 1,[7] being denied the right to return to work does not help substantiate a timely hostile environment claim. Administrative leave is not "the same unlawful employment practice" as the racist comments and disparate treatment Plaintiff suffered while actually working. *See* ECF No. 33 at 5-6, 12.

As to the mediation, Defendants are correct that Cheng's mere repetition of comments that Alta employees had previously made cannot form the basis for a hostile work environment claim.

---

[7] Although Plaintiff is not obligated to prove any factual allegations at this stage, attachments to the motion to dismiss suggest that all requests to return to work occurred in July 2019. *See* ECF No. 43 at 16-20.

Subject to evidentiary objections (*see infra*), at best these could serve as evidence of comments employees made before the mediation occurred, likely before the August 1, 2019 threshold. Critically, however, the SAC also alleges that during the mediation, Bonnet entered the mediation room and told Plaintiff to "sign the settlement today or I'll fire you tomorrow." ECF No. 33 at 15. This statement could be part of the same set of discriminatory comments as those prior to the mediation, creating a hostile work environment by explicitly telling Plaintiff she is no longer welcome among her co-workers. *See* ECF No. 33 at 8 (Hill telling Plaintiff that "You're not safe!" during a June 2019 meeting.) Nor is this a statement that is only attributable to Alta through Cheng.

A § 1981 claim for a hostile work environment may be timely based on Bonnet's comments during the August 2019 mediation. Defendants do not dispute that the termination resulting from this mediation is the basis for her retaliation and constructive discharge claims, possibly making them timely as well.

C. <u>Federal Rule of Evidence 408 Does Not Preclude Use of Mid-Arbitration Statements</u>

As discussed above, Defendants successfully argue that only § 1981 claims based on conduct that occurred during the August 2019 mediation are timely. Yet they also argue that Federal Rule of Evidence 408 bars Plaintiff from using such statements to support her claims, thereby compelling their dismissal. ECF No. 42 at 11-12.

Rule 408 prohibits the use of "conduct or a statement made during compromise negotiations about the claim" to either prove or disprove liability of one of the parties. Fed. R. Evid. 408(a). However, Rule 408 does not prohibit Plaintiff from presenting communication that occurred during the mediation for another purpose, such as to allege and/or prove (1) the invalidity of the confidentiality and settlement agreements, (2) that the mediation was not before a neutral mediator, and (3) that some wrong was committed during the mediation. *See* Fed. R. Evid. 408(b) (conduct or statements made during compromise negotiations about a claim may be admitted into evidence for a purpose other than proving or disproving liability); *see also United States v. Zinnel*, 725 Fed. App'x 453, 459 (9th Cir 2018) (citations omitted) ("Rule 408 is 'inapplicable when the claim is based upon some wrong that was committed in the course of the

settlement discussions.'"); *Uforma/Shelby Business Forms, Inc. v. N.L.R.B.*, 111 F.3d 1284, 1293 (6th Cir. 1997) (quoting 23 Charles Alan Wright & Kenneth W. Graham, Jr., FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 5314 (1st ed. 1980)) ("Rule 408 is . . . inapplicable when the claim is based upon some wrong that was committed in the course of the settlement; e.g., libel, assault, breach of contract, unfair labor practice, and the like . . . wrongful acts are not shielded because they took place during compromise negotiations[.]"); *Carney v. American University*, 151 F.3d 1090, 1095-96 (D.C. Cir. 1998) (settlement letters were admissible because they were not offered to prove discrimination but to establish a separate retaliation claim that arose during the negotiations); *Justice v. Meares*, 2021 WL 3410045, at *5 (E.D. Tenn. Aug. 4, 2021) ("extortionate threats during negotiations are not protected under Rule 408"); *Levenstein v. Salafsky*, 2002 WL 849594, at *1 (N.D. Ill. May 2, 2002) (evidence of statements made during negotiations that are offered to show a pattern of coercion fall outside the scope of Rule 408).

Based on this case law, this Court previously found that it:

> will not consider conduct or statements made during the August 6, 2019, mediation that serve no purpose other than to prove liability of the claims that existed before the mediation but will consider the allegations concerning the conduct for other purposes, such as whether some other wrong, such as constructive discharge or retaliation, was committed during the mediation.

ECF No. 15 at 14. Defendants now argue that the SAC's use of mediation statements falls into the former category. ECF No. 42 at 11-12. They cite two particular assertions of what occurred during the mediation. First, the SAC alleges that Cheng repeated prior statements from white coworkers "meant to slander Plaintiff and damage her professional reputation … play[ing] into racist trope[s] about Plaintiff[.]" ECF No. 42 at 12 (quoting ECF No. 33 at 11). Second, Cheng told Plaintiff she was no longer welcome at Alta because her white colleagues no longer felt safe around her. *Id.*

Only the first of these falls exclusively within the scope of uses prohibited by Rule 408. The second does hint at a similar use to the extent Plaintiff wishes to allege that her coworkers demonstrated animosity towards her before she was placed on administrative leave. Yet as

Plaintiff argues, it can also be used to demonstrate the constructive discharge that occurred on August 9, 2019. ECF No. 43 at 7. Of particular note are Cheng and Bonnet's statements to Plaintiff that she either resign by signing a settlement agreement to that effect, or accept that she will be fired the following day. ECF No. 33 at 15. Aside from this allegedly retaliatory firing being unique to the mediation and not itself part of any other claim based on prior conduct, this is precisely the type of constructive discharge for which the Court warned Defendants that statements about the mediation were admissible. *See* ECF No. 15 at 14. Alternatively, this falls within an established exception to Rule 408 – proof that the mediation was not neutral – because it essentially shows that this negotiation had to end with Alta getting what it wanted, Plaintiff's termination.

Defendants argue in reply that Plaintiff's argument actually proves their own because "she is specifically using the settlement discussions … to prove liability of her claims—racial discrimination." ECF No. 44 at 5. But for the reasons noted above, Plaintiff can potentially use Bonnet's statement from the mediation to prove that during the mediation itself, Bonnet engaged in conduct that was part of a pattern of creating a hostile work environment, was retaliatory, or constituted constructive discharge.

Rule 408 does not categorically preclude Plaintiff's reliance on events that occurred during the August 2019 mediation to support Plaintiff's claims for retaliation, constructive discharge, or creation of a hostile work environment. None of these claims should be dismissed.

D. Leave to Amend

A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. *See Akhtar*, 698 F.3d at 1213.

For the reasons provided above, the undersigned recommends dismissal of all FEHA claims as untimely. The undersigned further recommends that the Court dismiss as untimely any claim under 42 U.S.C. § 1981 for discrete workplace discrimination based on conduct prior to August 1, 2019, including the failure to increase Plaintiff's pay after her probationary period elapsed. The undersigned recommends denying, however, the motion to dismiss § 1981 claims

for retaliation, constructive discharge, and creation of a hostile work environment.

The reasons for finding Plaintiff's FEHA claims and some of her § 1981 claims untimely are based in law rather than fact. Plaintiff's opposition to the motion to dismiss does not suggest any additional facts she could plead to justify tolling the statutes of limitations that preclude these claims. *See generally* ECF No. 43. Both the final pages of her opposition and her motion for leave to file a TAC focus on why the waiver in the settlement agreement should be voided as obtained through fraudulent inducement. ECF No. 46 at 2, 4-5; *see also* ECF No. 49 at 3 (reply brief admitting that the TAC "Does Not Introduce a New Factual Claim" compared to the SAC). The validity of the settlement agreement will only be relevant if Defendants assert as an affirmative defense that Plaintiff has waived her claims through the settlement agreement. Plaintiff could raise arguments about the validity of the settlement agreement at the proper time in response to any such affirmative defense. *See supra* IV.A.[8]

Leave to amend Plaintiff's FEHA claims and dismissed § 1981 claims, including by filing the TAC, should be denied. Plaintiff should instead be permitted to proceed only on the SAC's § 1981 claims for retaliation, constructive discharge, and creation of a hostile work environment.

## C. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that the hearing on Plaintiff's motion for leave to file a Third Amended Complaint, currently set for September 17, 2026 at 10:00 A.M., is VACATED.

Further, **IT IS HEREBY RECOMMENDED THAT**:

1. Defendants' Motion to Dismiss (ECF No. 42) is:

    a. GRANTED WITHOUT LEAVE TO AMEND as to:

---

[8] Plaintiff's reply brief in support of her motion to file a TAC argues that Defendants sought to rely on the waiver in the settlement agreement to defeat Plaintiff's claims. ECF No. 49. This twists the procedural history of the motion to dismiss. As explained in these findings and recommendations, Defendants relied solely on Rule 408 and the fact that the statute of limitations for most of these claims had lapsed. ECF No. 42. It was Plaintiff that first invoked the settlement agreement's waiver, as evidence that the statute of limitations should be tolled because she initially thought she had lost the right to bring the current claims (ECF No. 43 at 4) – an argument that the undersigned rejects.

i. Any claim under the Fair Employment and Housing Act ("FEHA"):

ii. Any claim of workplace discrimination under 42 U.S.C. § 1981 based on conduct predating August 1, 2019, including but not limited to the purported failure to increase Plaintiff's salary following the completion of her probationary employment with Defendant Alta California Regional Center;

b. DENIED as to claims under 42 U.S.C. § 1981 for:

i. Retaliation

ii. Constructive discharge; and

iii. Creation of a hostile work environment, based on comments made by Defendant Bonnet during the August 6, 2019 mediation, and any prior conduct that falls within the same pattern of unlawful employment practices as said comments.

2. Plaintiff's Motion for Leave to File a Third Amended Complaint (ECF No. 46) be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, either party may file written objections with the court. Such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Local Rule 304(d). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**SO ORDERED**.

DATED: September 14, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE